## A04A1469. SEXTON v. THE STATE.

(603 SE2d 66)

BLACKBURN, Presiding Judge.

Following a jury trial, James Michael Sexton was convicted of burglary and of various theft-related offenses. He appeals, challenging the sufficiency of the evidence and claiming ineffective assistance of counsel. We hold that the evidence sufficed to sustain the verdict on all counts and that the decision of his counsel as to which witnesses to call was strategic. Accordingly, we affirm.

1. On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence. *Short v. State.*[1] We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt. *Jackson v. Virginia.*[2]

(a) *Theft by receiving (Mayfield van).* Sexton first challenges his conviction for theft by receiving a van owned by Mayfield Dairy Farms. A person commits this offense when he retains stolen property which he knows or should know was stolen unless the property is retained with intent to restore it to the owner.[3]

The evidence on this charge shows that a van owned by Mayfield Dairy Farms was stolen from the Mayfield parking lot in mid-January 2002. A witness later saw Sexton driving the van. He did not have permission to be using the van, and no evidence showed he intended to return the vehicle to its owner. To the contrary, Sexton in a drunken state drove the van into a ditch outside his girlfriend's house. He eventually confessed to her that he knew the van was stolen. While pursuing another investigation, police discovered the van in the driveway at the girlfriend's house, with Sexton standing next to the van. Sexton denied stealing the van. This evidence sufficed to sustain the verdict of guilt. See *Preston v. State.*[4]

(b) *Theft by taking (Isuzu Rodeo).* The next conviction was for theft by taking an Isuzu Rodeo vehicle. A person commits this offense when he unlawfully takes any property of another with the intention of depriving him of the property.[5]

The evidence on this charge shows that in late January 2002, an Isuzu Rodeo vehicle was stolen from a parking lot while its owner was

---

[1] *Short v. State,* 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

[2] *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] OCGA § 16-8-7 (a).

[4] *Preston v. State,* 257 Ga. 42, 44 (1) (354 SE2d 135) (1987).

[5] OCGA § 16-8-2.

at work in a nearby building. Later that day, an officer witnessed Sexton (who was alone in the vehicle) drive the vehicle into a ditch and then run away. The officer chased Sexton down and arrested him. At trial, Sexton claimed to have had the owner's permission to drive the car, but the owner testified otherwise. This evidence sufficed to sustain the verdict of guilt. See *Renner v. State*[6] (evidence of flight may show consciousness of guilt); *Buchannon v. State*[7] (possession of recently stolen goods raises an inference of theft by the possessor).

(c) *Theft by receiving (Crown Victoria)*. The next conviction was for theft by receiving a Crown Victoria vehicle. As stated earlier, a person commits this offense when he retains stolen property which he knows or should know was stolen unless the property is retained with intent to restore it to the owner.[8]

The evidence on this charge shows that in February 2002, a Crown Victoria vehicle was stolen from a parking lot while its owner was at work in a nearby building. Later that day, Sexton drove this car to his girlfriend's residence and picked her up, driving her around in the vehicle. He admitted to her that he knew the car was stolen. Police arrested Sexton immediately upon his stopping the car at a local store. He denied stealing the vehicle. The evidence sufficed to sustain the verdict of guilt. See *Preston*, supra at 44.

(d) *Criminal trespass, burglary, and theft by taking (tools)*. The next three convictions were for criminal trespass, burglary, and theft by taking some tools from their owner. A person commits criminal trespass when he intentionally damages any property of another without consent of that other person.[9] A person commits burglary when he (without authority and with intent to commit theft) enters a building.[10] A person commits theft by taking when he unlawfully takes any property of another with the intention of depriving him of the property.[11]

The evidence on these charges shows that with his girlfriend as passenger, Sexton drove the Crown Victoria vehicle into a locked gate (which was protecting another person's land) to force the gate open. He drove the vehicle onto the land, parked near some buildings, and got out. The girlfriend did not see what he did, as she walked elsewhere for a while. After 15 minutes, he reentered the vehicle and drove away with her. The landowner soon returned to his property and found the gate damaged. With police, he discovered a building's

---

[6] *Renner v. State*, 260 Ga. 515, 517 (3) (a) (397 SE2d 683) (1990).
[7] *Buchannon v. State*, 199 Ga. App. 609, 610-611 (405 SE2d 583) (1991).
[8] OCGA § 16-8-7 (a).
[9] OCGA § 16-7-21 (a).
[10] OCGA § 16-7-1 (a).
[11] OCGA § 16-8-2.

door open and tools missing from that building. He had not given Sexton permission to take those tools or to enter his buildings or land. When police arrested Sexton in the Crown Victoria vehicle at the local store, they discovered paint scrapings on the vehicle from the gate, determined that the car's tire markings matched those left at the landowner's property, and also discovered the stolen tools in the car. The evidence sufficed to sustain the verdict of guilt on these charges.

The enumeration challenging the sufficiency of the evidence is without merit.

2. Sexton moved for a new trial, claiming he received ineffective assistance of counsel. He contends that the trial court erred in denying the motion.

> To establish a claim of ineffective assistance of counsel, [Sexton] must show both that his trial counsel's performance was deficient and that counsel's deficiency so prejudiced his defense that a reasonable probability exists that the result of the trial would have been different but for that deficiency. There is a strong presumption that trial counsel's assistance was adequate and that counsel's decisions were made within the bounds of reasonable professional judgment. Moreover, a trial court's finding that a defendant has been afforded effective assistance of counsel must be upheld unless that finding is clearly erroneous.

(Citations, punctuation and footnotes omitted.) *Johnson v. State.*[12]

Sexton claims that his trial counsel should have called three witnesses who testified at the motion for new trial hearing that Sexton exited the Crown Victoria vehicle, visited the local store, and returned to the vehicle *before* police arrested him. This, he contends, would have contradicted the testimony that police arrested him immediately upon his arriving at the store. Furthermore, he argues that his trial counsel should have called two witnesses who testified at the motion for new trial hearing that they had heard from a third nontestifying party that Sexton told that party where the Isuzu Rodeo's owner could find that vehicle. This, he contends, demonstrated that he had not stolen the vehicle.

With regard to the latter witnesses, their testimony would have been rank hearsay and clearly inadmissible.[13] Trial counsel can hardly be faulted for failing to call them as witnesses.

---

[12] *Johnson v. State*, 257 Ga. App. 30, 31 (570 SE2d 344) (2002).
[13] OCGA § 24-3-1.

With regard to the other witnesses, trial counsel told the trial court during the trial, and further testified at the motion for new trial hearing, that he had interviewed these witnesses, that he had discussed their testimony with Sexton at length, that he considered their testimony cumulative (and in some instances possibly harmful as placing Sexton at an undesirable place), and that he had decided not to call these witnesses because as a matter of strategy, he did not consider their value as sufficiently beneficial to outweigh the value of preserving the last word in closing argument. Indeed, while testifying for the State, the girlfriend had already stated (as did Sexton in his own testimony) that Sexton had exited the Crown Victoria and had visited the local store before being arrested upon his return to the vehicle.

"Deciding which defense witnesses will be called is a matter of trial strategy and tactics, and tactical errors do not constitute ineffective assistance of counsel. Declining to present evidence (other than the defendant's own testimony) so as to preserve the final word in closing argument is a well-recognized trial tactic." (Punctuation and footnote omitted.) *Williams v. State*.[14] Defense attorneys often choose not to present cumulative evidence so as to preserve the last word in closing argument. See, e.g., id.; *Silcox v. State*;[15] *Clay v. State*.[16] "The trial court's determination that trial counsel made a strategic decision not to call these witnesses is not clearly erroneous." *Williams*, supra at 455 (1) (a).

*Judgment affirmed. Barnes and Mikell, JJ., concur.*

DECIDED JULY 26, 2004.

*Avrett, Ponder & Withrock, William B. Barnwell*, for appellant.
*Kermit N. McManus, District Attorney, Herbert M. Poston, Jr., Stephen E. Spencer, Assistant District Attorneys*, for appellee.

---

[14] *Williams v. State*, 253 Ga. App. 453, 455 (1) (a) (559 SE2d 512) (2002).
[15] *Silcox v. State*, 241 Ga. App. 845, 846 (d) (528 SE2d 271) (2000).
[16] *Clay v. State*, 232 Ga. App. 656, 657 (1) (b) (503 SE2d 560) (1998).