## A06A0772. VILLAGOMEZ v. THE STATE.
(632 SE2d 400)

SMITH, Presiding Judge.

Oracio Villagomez appeals from his convictions for attempting to hijack a motor vehicle, aggravated assault, and criminal trespass. As we find no merit in his claim that insufficient evidence supports his convictions, we affirm.

On appeal, we view the evidence "in the light most favorable to the verdict and the appellant no longer enjoys the presumption of innocence; moreover, on appeal this court determines evidence sufficiency and does not weigh the evidence or determine witness credibility." (Citations and punctuation omitted.) *Williams v. State*, 217 Ga. App. 636, 638 (3) (458 SE2d 671) (1995). Viewed in this light, the record shows that Villagomez attempted to take Gail Robinson's Corvette after she filled it with gasoline at a gas station. When Robinson got back into her car, Villagomez approached her and prevented her from closing the door. He then waved a silver-colored handgun over her and demanded that she get out of the car. When he grabbed her shirt to pull her out of the car, it ripped, causing him to fall backward. Robinson then jumped out of her car and began screaming and crying hysterically that Villagomez was trying to rob her and take her car. When people began rushing toward Robinson, Villagomez entered the passenger side of a black Mercury Mountaineer that was parked behind Robinson's Corvette. A second man, later identified as Alexander Diaz, was in the driver's seat. Diaz sped off with Villagomez and turned right onto a dead-end street beside the gas station.

Three men, who drank coffee together at the gas station almost every morning (Charles Freeman, Joe Williams, and Scott Austin), testified that when they learned that someone had tried to take Robinson's car, they went outside, where they learned that the perpetrators had gone down the dead-end street in the black Mercury Mountaineer. Williams and Austin retrieved their guns from their car, and the three men went to the entrance of the dead-end street to try either to stop the perpetrators or get their license tag number. When the black Mercury Mountaineer containing the two men returned down the street, bystanders started yelling for it to stop. The driver of the Mountaineer accelerated and aimed for the three men, causing them to fear they would be run over. According to Freeman, the driver then put a gun on top of the steering wheel; Austin testified that the passenger pointed a silver gun at them. Austin then fired his weapon four times at the Mountaineer. Diaz ducked, causing the Mountaineer to swerve away from the men.

The driver of the Mountaineer then ran a red light without slowing down, causing a three-car collision. The two men exited the

Mountaineer and ran into a church parking lot. Austin identified Villagomez as the passenger in the Mountaineer at the time of the accident.

Donald Railey, a building contractor doing work at the church, testified that when he went to investigate the sound of gunshots, he heard a crash and then saw two men running rapidly toward him. When a worker suggested that he leave the area, he ran to his truck, which was parked about 50 feet away. When he started the ignition, the doors automatically locked. At the same time, the two men approached and tried to get into his truck. As Railey pulled away, Diaz fired his silver gun, shattering the truck's driver and passenger door windows. The contractor felt the heat from the bullet as it passed in front of his face and sped away from the men.

Lonnie Spearman testified that he saw the collision caused by the Mountaineer near the gas station. When he saw two men jump out of the Mountaineer and leave the scene of the accident, he decided to follow them. When he saw them run toward the church, he drove to the back of the church, where he saw them running on a sidewalk. When he pulled beside the men and confronted them about leaving the accident scene, Diaz pulled out a gun and pointed it at him. Fearing that his life was in danger, Spearman drove away. As Spearman drove away from the two men, he watched them in his rear-view mirror. When he saw a police officer, Officer Matthews, he showed him the direction the men had run. Officer Matthews exited his patrol car and ran in the direction given to him by Spearman. As he ran through the back yards of residential homes in the area, he saw two men banging on the back door of a home.

Therese Besal testified that, while she was talking on the telephone, two men appeared at her door and tried to break in. Besal ran out another door of her home while instructing the person to whom she was talking to call the police. When she turned to look back, she saw a police officer in her back yard.

As Officer Matthews approached the two men outside Besal's home, he drew his weapon and ordered the men to get on the ground. The men ran away, but were captured a few minutes later. After searching for the gun, the officers found it on a roof directly above where the men were taken into custody. When a police officer searched Villagomez's jacket, she found a ski mask and gloves. A search of the Mountaineer revealed a second ski mask, a set of latex gloves, and another loaded handgun.

Numerous witnesses identified the two men involved in these incidents as Villagomez and Diaz. Although Robinson did not select Villagomez in two photo lineups, she did identify him at trial as the man who pulled her from her Corvette. Railey testified that when Diaz shot at him, Villagomez was standing right behind him, as if he

were prepared to jump in the truck if the door opened. Spearman testified that when Diaz pointed the gun at him, he was approximately six feet away and Villagomez was standing right beside Diaz. Besal testified that both Villagomez and Diaz were throwing themselves against her back door when they tried to break into her home.

The State indicted Villagomez for two counts of attempting to hijack a motor vehicle (Robinson and Railey), four counts of aggravated assault (Williams, Austin, Railey, and Spearman), one count of possession of a firearm during the commission of a crime, and one count of criminal trespass for entering Besal's property for the unlawful purpose of fleeing from law enforcement officers. The jury found Villagomez guilty of attempting to hijack a motor vehicle from Railey, aggravated assault of Spearman, and criminal trespass. The jury acquitted him of all the other charges.

Villagomez argues on appeal that the evidence is insufficient to support his convictions because the evidence concerning the crimes of which he was acquitted cannot be used to support the crimes for which he was convicted. Specifically, he contends that since the jury found him not guilty of attempting to carjack Robinson's Corvette and not guilty of aggravated assault against the men trying to stop the Mountaineer at the entrance of the dead-end street, that evidence cannot be used to show that he was a party to the crimes for which he was convicted. Villagomez argues that when this evidence is excluded, the evidence shows only presence and flight and "neither presence, nor flight, nor both together, without more, is conclusive of guilt." *Skaggs-Ferrell v. State*, 266 Ga. App. 248, 252 (7) (596 SE2d 743) (2004).

We find no merit in Villagomez's argument, which is, in essence, an inconsistent verdict argument in disguise, because "the Supreme Court of Georgia abolished the rule in this State against inconsistent verdicts in criminal cases." *Kimble v. State*, 236 Ga. App. 391, 392 (1) (512 SE2d 306) (1999). The rationale behind the abolition of this rule is that:

> inconsistent verdicts . . . should not necessarily be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion . . . , and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion. . . . The fact that the inconsistency may be the result of lenity, coupled with the Government's inability to invoke review, suggests that inconsistent verdicts should not be reviewable. We also reject, as imprudent and unworkable, a rule that would allow criminal defendants to challenge inconsistent verdicts on the ground that in their case

the verdict was not the product of lenity, but of some error that worked against them. Such an individualized assessment of the reason for the inconsistency would be based either on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake.

(Citations and punctuation omitted.) Id. at 393 (1).

Based on the above, and after consideration of all of the evidence presented to the jury, we find sufficient evidence supports Villagomez's convictions under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. Ruffin, C. J., and Phipps, J., concur.*

DECIDED MAY 12, 2006 —
RECONSIDERATION DENIED JUNE 9, 2006.

*Blend & Michael, Maryann F. Blend*, for appellant.

*Daniel J. Porter, District Attorney, Brooke O. Langston, Assistant District Attorney*, for appellee.