## A06A0881. DIAZ v. THE STATE.
### (634 SE2d 160)

SMITH, Presiding Judge.

Alexander Diaz appeals from his convictions on two counts of attempting to hijack a motor vehicle, four counts of aggravated assault, possession of a firearm during the commission of a crime, and criminal trespass. In his sole enumeration of error, Diaz contends the trial court should have granted his motion to sever his trial from that of his co-defendant, Oracio Villagomez.[1] Finding no merit in this argument, we affirm.

> Whether to sever the trials of co-defendants is a matter of discretion with the trial judge, and, absent abuse, his decision will not be disturbed by the appellate court. Factors to be considered by the court in its exercise of discretion are as follows: (1) Will the number of defendants create confusion as to evidence and law relative to the separate defendants? (2) Is there a danger that evidence admissible against only one defendant (or, where there are more than two defendants, only against certain ones of them) will nevertheless be considered against another?; and (3) Are the defendants' respective defenses antagonistic to the defenses, or the rights, of another? It is the defendant who has the burden of showing, on his motion to sever, that any of the named criteria are applicable so as to prejudice his defense.

---

[31] See *Voyles,* supra.

[1] In *Villagomez v. State,* 279 Ga. App. 686 (632 SE2d 400) (2006), we affirmed Villagomez's conviction. Severance was not an issue in that appeal.

(Citations and punctuation omitted.) *Hill v. State*, 212 Ga. App. 448 (1) (442 SE2d 298) (1994). Diaz argues that he was entitled to a trial separate from Villagomez because there was confusion among the eyewitnesses about "which defendant was supposed to have done what during the course of the criminal enterprise," and because Villagomez testified and placed all responsibility for the crimes on Diaz, thereby creating antagonistic defenses.

The record shows that Villagomez and Diaz's ill-fated crime spree began when Villagomez attempted to take Gail Robinson's Corvette after she filled it with gasoline at a gas station. When Robinson got back into her car, Villagomez approached her and prevented her from closing the door. He then waved a silver-colored handgun over her and demanded that she get out of the car. When he grabbed her shirt to pull her out of the car, it ripped, causing him to fall backward. Robinson then jumped out of her car and began screaming and crying hysterically that he was trying to rob her and take her car. When people began rushing toward Robinson, Villagomez entered the passenger side of a black Mercury Mountaineer that was parked behind Robinson's Corvette. A second man, later identified as Diaz, was in the driver's seat. Diaz sped off with Villagomez and turned right onto a dead-end street beside the gas station.

Three men, who drank coffee together at the gas station almost every morning (Charles Freeman, Joe Williams, and Scott Austin), testified that when they learned that someone had tried to take Robinson's car, they went outside, where they learned that the perpetrators had gone down the dead-end street in the black Mercury Mountaineer. Williams and Austin retrieved their guns from their car, and the three men went to the entrance of the dead-end street to try either to stop the perpetrators or get their license tag number. When the black Mercury Mountaineer containing the two men returned down the street, bystanders started yelling for it to stop. The driver of the Mountaineer accelerated and aimed for the three men, causing them to fear they would be run over. According to Freeman, the driver then put a gun on top of the steering wheel; Austin testified that the passenger pointed a silver gun at them. Austin then fired his weapon four times at the Mountaineer. Diaz ducked, causing the Mountaineer to swerve away from the men.

The driver of the Mountaineer then ran a red light without slowing down, causing a three-car collision. The two men exited the Mountaineer and ran into a church parking lot. Austin testified at trial that Villagomez was the passenger in the Mountaineer at the time of the accident.

Donald Railey, a building contractor doing work at the church, testified that when he went to investigate the sound of gunshots, he heard a crash and then saw two men running rapidly toward him.

When a worker suggested that he leave the area, he ran to his truck, which was parked about 50 feet away. When he started the ignition, the doors automatically locked. At the same time, the two men approached and tried to get into his truck. As Railey pulled away, Diaz fired his silver gun, shattering the truck's driver and passenger door windows. The contractor felt the heat from the bullet as it passed in front of his face, and he sped away from the men.

Lonnie Spearman testified that he saw the collision caused by the Mountaineer near the gas station. When he saw two men jump out of the Mountaineer and leave the scene of the accident, he decided to follow them. When he saw them run toward the church, he drove to the back of the church, where he saw them running on a sidewalk. When he pulled beside the men and confronted them about leaving the accident scene, Diaz pulled out a gun and pointed it at him. Fearing that his life was in danger, Spearman drove away. As Spearman drove away from the two men, he watched them in his rearview mirror. When he saw a police officer, Officer Matthews, he showed him the direction the men had run. Officer Matthews exited his patrol car and ran in the direction given to him by Spearman. As he ran through the back yards of residential homes in the area, he saw two men banging on the back door of a home.

Therese Besal testified that, while she was talking on the telephone, two men appeared at her door and tried to break in. Besal ran out another door of her home while instructing the person to whom she was talking to call the police. When she turned to look back, she saw a police officer in her backyard.

As Officer Matthews approached the two men outside Besal's home, he drew his weapon and ordered the men to get on the ground. The men ran away, but were captured a few minutes later. After searching for the gun, the officers found it on a roof directly above where the men were taken into custody. When a police officer searched Villagomez's jacket, she found a ski mask and gloves. A search of the Mountaineer revealed a second ski mask, a set of latex gloves, and another loaded handgun.

Numerous witnesses identified the two men involved in these incidents as Villagomez and Diaz. Although Robinson did not select Villagomez in two photo lineups, she did identify him at trial as the man who pulled her from her Corvette. Railey testified that when Diaz shot at him, Villagomez was standing right behind him, as if he were prepared to jump in the truck if the door opened. Spearman testified that when Diaz pointed the gun at him, he was approximately six feet away and that Villagomez was standing right beside Diaz. Besal testified that both Villagomez and Diaz were throwing themselves against her back door when they tried to break into her home.

Villagomez testified that after Diaz drove to the gas station, he asked Villagomez to drive because he was not feeling well. Villagomez claimed that Diaz went outside the car, that he did not see what Diaz did, and that when Diaz returned to the car, he sat in the passenger seat and told Villagomez to leave. After Villagomez drove down to the end of the dead-end street, he switched seats with Diaz because Diaz told him he was driving too slow, and Diaz began driving. When they exited the dead-end street, someone shot at them, causing the accident. Villagomez testified that he ran from the scene with Diaz because he was frightened. He denied participating in or planning the attempted car-jacking of Robinson.

Based on our review of the evidence, we find the trial court did not abuse its discretion when it denied Diaz's motion to sever. The offenses were a series of continuous acts connected together both in time and the area in which committed and there was no likelihood of confusion. See *Morrow v. State*, 226 Ga. App. 833, 834 (1) (487 SE2d 669) (1997). "Furthermore, the mere fact that co-defendants' defenses are antagonistic is not sufficient in itself to warrant separate trials." (Citation and punctuation omitted.) *Hill*, supra, 212 Ga. App. at 449 (1). "A showing of harm is necessary." (Citation omitted.) *Cain v. State*, 235 Ga. 128, 129 (218 SE2d 856) (1975). As Diaz "fails to point to any testimony or other evidence introduced at the joint trial he received that could not have been introduced against him in a separate trial," he has failed to meet his burden of showing harm. *Williams v. State*, 213 Ga. App. 458, 460 (2) (444 SE2d 831) (1994).

*Judgment affirmed. Ruffin, C. J., and Phipps, J., concur.*

DECIDED JULY 11, 2006.

*Wystan B. Getz*, for appellant.
*Daniel J. Porter, District Attorney, Brooke O. Langston, Assistant District Attorney*, for appellee.