## A11A0642. SCRUGGS v. THE STATE.
(711 SE2d 86)

MIKELL, Judge.

Following his conviction by a jury of armed robbery, two counts of aggravated assault,[1] and criminal trespass,[2] Tyral Scruggs appeals from the denial of his motion for new trial.

1. In his sixth enumeration of error, Scruggs challenges the legal sufficiency of the evidence on his armed robbery conviction, arguing that the trial court should have granted his motion for directed verdict.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.[3]

This test applies "when the sufficiency of the evidence is challenged, whether the challenge arises from the [denial] of a motion for

---

[32] (Citation and punctuation omitted.) *Roberson v. Gnann*, 235 Ga. App. 112, 114 (2) (508 SE2d 480) (1998).

[1] The aggravated assault convictions were merged into the armed robbery conviction for purposes of sentencing.

[2] Scruggs was acquitted of Count 4, possession of a firearm during commission of a felony.

[3] (Citation and footnote omitted.) *Sexton v. State*, 268 Ga. App. 736 (1) (603 SE2d 66) (2004). See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

directed verdict or the [denial] of a motion for new trial."[4]

Viewed in this light, the evidence was that, on the evening of November 2, 2007, John Gil had just been paid his wages by the owner of the tire shop in Cobb County where he worked part time. Gil received his pay, $300, in fifteen $20 bills. Because his driver's license had been suspended, Gil began walking home and stopped by Fred's, a convenience store, to buy two packs of cigarettes. As he left Fred's, around 8:00 or 9:00 p.m., Gil cut through the parking lot of a liquor store and started down Reed Drive. He noticed a Ford Crown Victoria parked on that street in an area where no one lived. Two men on foot then approached him, and one of the two asked him for a cigarette. As he was getting the cigarettes out of his pocket, the man who asked for the cigarette, identified by Gil as Scruggs, pulled a handgun and stuck it in Gil's stomach. Gil tried to push the gun away, but then the second man pulled a gun, put it in Gil's back, and pulled Gil's sweatshirt up over his head. The two men then went through Gil's pockets and took his money, two packs of cigarettes, his identification card, and a Chapstick. Gil asked the two men if he could leave and they said "yes." As he was walking, then running, away, Gil saw the Crown Victoria drive by and pick up the two men. Gil got the tag information and the make and color[5] of the car and watched it speed away. Steven Perry, who was indicted and tried with Scruggs, was the driver of the Crown Victoria.[6]

Gil called the police, and an armed robbery dispatch giving the description of the Crown Victoria was broadcast. Sergeant Orrin Hamilton of the Cobb County Sheriff's Department was driving to his second job around 10:15 p.m. when he saw a car matching this description carrying two African-American men eastbound on Windy Hill Road.[7] Hamilton pulled in behind the car, which then made a quick right turn, requiring Hamilton to go around a median to pursue it. The car then made a u-turn directly in front of his car and went back to Windy Hill Road where it turned into the Hickory Lake Apartments. The car parked in a parking spot, and three men jumped out and ran. Hamilton pursued them in his car, keeping his spotlight on them as they ran. Hamilton heard someone yell "get out of my house" and saw Scruggs on the lawn, where he took him into custody. Sergeant Robert Dorsey also responded to the dispatch and heard a woman yelling that someone was trying to break into her

---

[4] (Citation omitted.) *Millirons v. State*, 268 Ga. App. 644, 645 (1) (602 SE2d 346) (2004).

[5] The car was gray, with faded paint on the trunk.

[6] The second man with a gun, described by Gil as an African-American with gold teeth and twists in his hair, was not apprehended.

[7] The initial dispatch was for two African-American men in the car, but it was later updated to three men.

apartment. He pursued the man and arrested co-defendant Perry. A black tee shirt was found on the ground in front of the apartments where Dorsey heard the woman scream. When Perry was arrested, he was wearing a long sleeved brown shirt and blue jeans.

Detective William Stephens also responded to the apartments and went to the Crown Victoria where he found Gil's identification card on the ground outside the front passenger's door. The identification card was returned to Gil by a police officer about one hour following the robbery. Police obtained a search warrant, and crime scene technicians processed the car for latent fingerprints, finding one on a compact disc and one on a cell phone. The print on the cell phone was later identified as Perry's. No matches for Scruggs were made on the identifiable latent prints. One of the technicians also located a Cobra 9 millimeter pistol lodged between the rear seat cushions, with eleven rounds of ammunition in the magazine. This technician also found two packs of cigarettes in the car. No second handgun was found.

Officers took Perry, Scruggs, and two other African-American men wearing black who were located in the apartment complex to a nearby high school. Gil was transported to the high school and read the guidelines for a showup. The men were shown to Gil one at a time, and he identified Perry as the driver of the car and Scruggs as the man who walked up, asked him for the cigarette, and stuck a gun in his stomach. Gil said that the other two men were not involved.

Following Scruggs's arrest, Detective Stephens removed $359.37 in cash from him. This total consisted of sixteen $20 bills, three $10 bills, one $5 bill, four $1 bills, and loose change.

Scruggs testified that he had just moved to Georgia and obtained work at Church's Chicken through Perry, a relative through marriage. On November 2, 2007, he had gone to Church's to get his paycheck. His sister had dropped him off on the east/west connector where he usually caught a bus to Church's. That day, he called Perry, who said he would come get him. Instead of Perry, two men Scruggs did not know came to pick him up in the Crown Victoria and took him to Church's where he cashed his paycheck for around $80 to $100. Scruggs said he had also withdrawn $200 from his wife's bank account at an ATM; that he had sold some musical equipment to his brother for some additional cash; and he had $320 to $340 cash when he was arrested. Scruggs testified that he was then taken back to the bus stop where he waited for a while for the bus. Perry then returned to the bus stop with two other men in the car and said he would take Scruggs home because he had missed the bus. When they arrived at the apartments, the two other men jumped out of the car and ran. Scruggs and Perry then got out and ran. Scruggs ran because he was scared and he was on probation at the time. One of the two men who

ran had twists in his hair and gold teeth.

Co-defendant Perry testified that he was working at Church's on November 2 and that Scruggs did come by in a Crown Victoria to pick up his paycheck. Scruggs and another man who was chubby with short twists in his hair picked Perry up from work. He did not know the other man's "government name," but knew him as "Munchie" or "Blunt." Perry drove the Crown Victoria because neither of the other men had a license. Perry denied that there was any conversation about robbing anyone and denied that he ever saw a gun. Perry drove Scruggs and the other man to the liquor store and they got out, returning in a few minutes. Perry then drove to the apartments, without speeding or driving erratically. Perry denied knowing about, discussing, or seeing any criminal activity.

We find the evidence of armed robbery legally sufficient to support Scruggs's conviction.[8] Scruggs argues that there were conflicts in Gil's testimony and pretrial statements to the police, weaknesses in his descriptions of the robbers and in his identification of Scruggs and Perry as participants. These circumstances only created issues of fact for the jury, which resolved them adversely to Scruggs.[9]

2. Scruggs's first enumeration challenges the trial court's overruling of his special demurrer to the indictment.

> The true test of the sufficiency of an indictment is not whether it could be made more certain and definite, but whether it contains the elements of the offense charged, apprises the accused of what he must be prepared to defend against, and protects against double jeopardy. This Court applies a de novo standard of review to a trial court's determination that the allegations in an indictment were legally sufficient.[10]

The armed robbery count alleged that Perry and Scruggs committed the "offense of armed robbery for that the said accused . . . on or about the 2nd day of November, 2007, with intent to commit theft, did take U. S. currency and cigarettes from John Paul Gil by use of a handgun." The aggravated assault counts charged that Perry and Scruggs committed "the offense of aggravated assault for that the said accused . . . on or about the 2nd day of November, 2007, did

---

[8] *Jackson v. Virginia*, supra; see *Wright v. State*, 300 Ga. App. 32, 34 (2) (684 SE2d 102) (2009).

[9] *Wright v. State*, supra.

[10] (Punctuation and footnotes omitted.) *Doe v. State*, 306 Ga. App. 348, 349 (1) (702 SE2d 669) (2010).

unlawfully make an assault upon the person of John Paul Gil with intent to rob'' (Count 2) and ''with a handgun, a deadly weapon, by brandishing it in a threatening manner towards said victim (Count 3).'' The criminal trespass count charged Scruggs ''with the offense of criminal trespass for that the said accused . . . on and about the 2nd day of November, 2007, did knowingly and without authority enter upon the premises of Joseph McGirt, located at 490 Windy Hill Road, Apt. 913, for an unlawful purpose, to wit: to hide from pursuing police officers (Count 5).''

Scruggs argues that none of the counts states the time of the alleged offenses; the armed robbery count fails to state with certainty the offense charged because it does not allege which defendant used a handgun in commission of the offense; the aggravated assault counts fail to identify which defendant made the aggravated assaults on the victim; and the criminal trespass count fails to allege a crime.

''A general demurrer challenges the sufficiency of the *substance* of the indictment, whereas a special demurrer challenges the sufficiency of the form of the indictment.''[11] By filing a special demurrer, the defendant claims that the indictment is ''imperfect as to *form* or that the accused is entitled to more information.''[12]

(a) We find Scruggs's assertion that he was entitled to have the time of day at which the crime was committed included in the indictment without merit.[13]

(b) Scruggs argues that his special demurrer should have been granted because the indictment does not specify which of the accuseds had the gun, or whether they each had a gun, or whether one aided and abetted the other.

> While the defendant is entitled to know the particular facts constituting the alleged offense to enable him to prepare for trial, it is not necessary for the [s]tate to spell out in the indictment the evidence on which it relies for a conviction. Because the allegations of the indictment were sufficient to be easily understood by the jury, to allow [Scruggs] to prepare [his] defense, and to protect [him] from double

---

[11] (Citations omitted; emphasis supplied.) *Bramblett v. State*, 239 Ga. 336, 337 (1) (236 SE2d 580) (1977).

[12] (Citations and punctuation omitted.) *State v. Delaby*, 298 Ga. App. 723, 724 (681 SE2d 645) (2009).

[13] *Miller v. State*, 224 Ga. 627, 630 (3) (163 SE2d 730) (1968) (citing OCGA § 17-7-54 and *Thomas v. State*, 71 Ga. 44, 48 (1883)); *Bostic v. State*, 173 Ga. App. 494 (1) (326 SE2d 849) (1985) (indictment need not specify time of day offense was committed).

jeopardy, the trial court's decision overruling [Scruggs's] special demurrer was authorized.[14]

Also, it is "well-settled in Georgia that the [s]tate is not required to specify in the indictment that it is charging the defendant as a party to the crime."[15]

Scruggs's challenge that Count 5, criminal trespass, does not allege a crime also fails because eluding and hiding from an officer is a violation of OCGA § 16-10-24 (a), which satisfies the unlawful purpose element of criminal trespass, as alleged in the indictment.[16]

Therefore, we find no error in the trial court's overruling of Scruggs's special demurrer.

3. In his second enumeration, Scruggs argues that the trial court erred in denying his motion to sever his trial from that of his co-defendant.

"The decision whether to grant or deny a motion to sever is within the discretion of the trial court."[17]

It is incumbent upon the defendant who seeks a severance to show clearly that the defendant will be prejudiced by a joint trial, and in the absence of such a showing, the trial court's denial of a severance motion will not be disturbed. Factors to be considered by the trial court are: whether a joint trial will create confusion of evidence and law; whether there is a danger that evidence implicating one defendant will be considered against a co-defendant despite limiting instructions; and whether the defendants are asserting antagonistic defenses.[18]

Scruggs argues that his and Perry's defenses were antagonistic, thereby requiring severance. "[T]he mere fact that co-defendants' defenses are antagonistic is not sufficient in itself to warrant separate trials. A showing of harm is necessary."[19] Because Scruggs has failed "to point to any testimony or other evidence introduced at the joint trial he received that could not have been introduced against him in a separate trial, he has failed to meet his burden of

---

[14] (Citations and punctuation omitted.) *Fyfe v. State*, 305 Ga. App. 322, 325-326 (1) (699 SE2d 546) (2010).

[15] (Citation and punctuation omitted.) *Metz v. State*, 284 Ga. 614, 618 (3) (669 SE2d 121) (2008).

[16] See *Jackson v. State*, 295 Ga. App. 427, 433 (5) (671 SE2d 902) (2009).

[17] (Footnote omitted.) *Harper v. State*, 300 Ga. App. 757, 769 (12) (686 SE2d 375) (2009).

[18] (Citations and punctuation omitted.) *Metz v. State*, supra at 616 (2).

[19] (Citations and punctuation omitted.) *Daniels v. State*, 306 Ga. App. 577, 585 (5) (703 SE2d 41) (2010). Accord *Diaz v. State*, 280 Ga. App. 413, 416 (634 SE2d 160) (2006).

showing harm."[20]

There was no error in the trial court's denial of Scruggs's motion to sever.

4. Scruggs argues in his third enumeration that the trial court erred in denying his motion to suppress evidence of the showup in which he was identified by Gil.

At a hearing on a motion to suppress, the trial judge sits as the trier of fact.[21]

> In cases involving the review of the grant or denial of motions to suppress or motions in limine, we must construe the evidence most favorably to uphold the findings and judgment of the trial court, and that court's findings as to disputed facts and credibility must be adopted unless clearly erroneous.[22]

The trial court's application of the law to undisputed facts is subject to de novo review.[23] Here, testimony was introduced at the hearing on the motion to suppress, and the witnesses were cross-examined by counsel for Scruggs. The trial court then orally announced her factual findings on the record. Therefore, we apply the clearly erroneous standard to our review of this ruling.[24]

> Although a one-on-one showup is inherently suggestive, identification testimony produced from the showup is not necessarily inadmissible. We must apply a two-part test to determine whether the showup was impermissibly suggestive, and, if the showup was impermissibly suggestive, we then consider the totality of the circumstances to determine whether a "very substantial likelihood" existed of irreparable misidentification. With regard to part one of the test, this Court has previously held that on-the-scene showup identifications, like the one in the present case, are often necessary "due to the practicabilities inherent in such situations." Thus, as long as this type of showup was reasonably and fairly conducted at or near the time of the offense, it is not impermissibly suggestive and we need not

---

[20] (Citation and punctuation omitted.) *Diaz v. State*, supra. Accord *Mason v. State*, 279 Ga. 636, 637-638 (2) (a) (619 SE2d 621) (2005).

[21] *Page v. State*, 296 Ga. App. 431 (1) (674 SE2d 654) (2009).

[22] (Citation and punctuation omitted.) *Self v. State*, 245 Ga. App. 270, 272-273 (2) (537 SE2d 723) (2000).

[23] *Petty v. State*, 283 Ga. 268, 269 (2) (658 SE2d 599) (2008).

[24] *Self v. State*, supra.

reach the second part of the test.[25]

Here, the robbery occurred at approximately 10:15 p.m., and the Crown Victoria was spotted by Hamilton as soon as he heard the BOLO on his radio. Scruggs and Perry were apprehended after Hamilton followed the car into the apartments, and they, along with two other African-American men, were taken to a nearby location where Gil identified Scruggs at 11:32 p.m. as one of the men who robbed him. At 11:35 p.m., Gil identified Perry as the driver of the Crown Victoria. The other two men, according to Gil, did not participate in the robbery. Gil also identified Scruggs at trial as the man who came up, asked for a cigarette, and pulled a gun on him.

The majority of Scruggs's argument here consists of quoting from Gil's testimony which was given at the motion for new trial hearing regarding his identification of Scruggs. Scruggs argues that inconsistencies in this testimony, along with those in Gil's trial testimony, make his pretrial identification impermissibly suggestive.

As identity is a question for the trier of fact, the credibility of the witness making such identification is not to be decided by this Court where a witness identifies a defendant. Instead, the witness's credibility as well as the weight given his testimony on the perpetrator's identity were issues for the jury.[26]

Therefore, we find no error in the trial court's denial of Scruggs's motion for new trial on this issue.

5. Scruggs contends, in his fourth enumeration, that the trial court erred in allowing the state to cross-examine him regarding pending, dismissed, and nonfelony criminal charges.

"The standard of review of the trial court's ruling on a challenge to evidence on the ground that its probative value is outweighed by its tendency to unduly prejudice the jury is an abuse of discretion standard."[27]

Scruggs testified in his defense and, during his direct examination, the following exchange occurred:

Q. Tyral, have you ever been a [sic] trouble before?

---

[25] (Footnotes omitted.) *Wallace v. State*, 295 Ga. App. 452, 454 (1) (671 SE2d 911) (2009).

[26] (Citation and punctuation omitted.) *Lee v. State*, 298 Ga. App. 630, 631 (1) (680 SE2d 643) (2009).

[27] *Holland v. State*, 221 Ga. App. 821, 825 (3) (472 SE2d 711) (1996), citing *Carroll v. State*, 261 Ga. 553, 554 (2) (408 SE2d 412) (1991).

A. Yes.

Q. And tell us what — you had a prior conviction —

A. Yes, it was — well, I was on probation. I am off probation. I successfully completed it.

Q. Can you speak up a little bit? It is hard for me to hear.

A. I was on probation.

THE COURT: He needs to pull it towards him.

A. Can you hear me?

Q. Well, you need to speak up.

A. I was on —

Q. All right. Kind of look this way so we can hear you, and speak up. We all want to hear what you have to say.

A. Yes, I was on probation. It's sort of like a — down here they call it a first offender act. Down there, it's SIS. And I successfully completed my probation. I am off probation now. This happened like four or five years ago.

Q. That was in Missouri?

A. Yes, in Kansas City, Missouri.

During the state's cross-examination, Scruggs was asked why he ran from the car when the police approached. He answered as follows:

A. I was on probation at the time, as I stated before. . . . Only reason I jumped out, I was scared, I was on probation. I can't get in any trouble. I came down here. When I moved down here, I immediately got a job to take care of my kids. That is all I was doing. I didn't cause anyone harm. I didn't do anything to anyone. . . .

Q. And what were you on probation for?

A. Possession charge.

Q. Possession of what?

A. Cocaine.

Q. Okay. Okay. And you testified also that — Mr. West said, have you ever been in trouble before, right? And you said yes.

A. Yes.

Q. He asked you, for what? And you told him this one incident.

A. He didn't ask me what. He said, have you ever been in trouble before? I said yes. And then I told him I was on probation.

Q. Okay. He asked you what you have been in trouble with before, and you told him for this probation for possession of cocaine?

A. That is what it would have been.

Q. But that is not true. You have been in trouble before that and after that, haven't you?

A. When did I get in trouble before? For parking tickets or something?

Q. You have been in trouble before and after that, have you not?

A. No felonies. It was like speeding tickets.

At this point, the prosecutor asked that the jury be excused, and a discussion ensued as to whether defense counsel had opened the door to allow the state to introduce other arrests of Scruggs. The trial court allowed the state to ask about three arrests, a November 15, 2008 Georgia possession of cocaine charge; a November 21, 2008 disorderly conduct, assault, and sexual battery charge; and a June 6, 2006 Kansas charge of endangering his daughter by not having her in a seat belt, to which Scruggs pled guilty.

When cross-examination continued, the state asked:

Q. Mr. Scruggs, we were talking about — you had answered your attorney's question: Ever been in trouble before? And you said that one time for the cocaine. But you've actually been in trouble more times than that, have you not?

A. Yes, I've been in trouble.

In a criminal case the [s]tate can not rebut or question the presumption of the defendant's good character unless the defendant discards the presumption thus afforded and elects to put his actual character in issue by evidence or by his statement to the jury. However, OCGA § 24-9-82 provides: "A witness may be impeached by disproving the facts testified to by him." Thus, while a criminal defendant is not subject to impeachment by proof of general bad character or prior convictions until he puts his general good character in evidence, *he is subject to impeachment the same as any other witness. Evidence of prior crimes or bad acts can be admitted where such evidence is necessary and relevant to impeach the defendant's specific testimony.*[28]

---

[28] (Citations and punctuation omitted; emphasis supplied.) *Lucas v. State*, 215 Ga. App. 293, 295 (2) (450 SE2d 313) (1994). OCGA § 24-9-20 (b): "If a defendant testifies, he or she

The colloquy recounted above shows that defense counsel opened the door to other incidents of "trouble" in which Scruggs was involved. Therefore, the trial court did not abuse its discretion in allowing the state to cross-examine Scruggs on this issue.[29]

6. Scruggs's fifth enumeration is that the trial court erred in denying his motion for new trial based on the fact that Gil "was threatened with jail if he refused to testify and was told that the only way he could recover his money was if [Scruggs] was convicted."

Gil testified at the motion for new trial hearing that he had a new job at the time of the trial and he did not want to be tied up in court. Upon informing the prosecutor of this, Gil was taken before the trial court who advised him that he was under subpoena and that he did have to be present. Gil also testified that the assistant district attorney, in response to Gil's inquiry about recovering the $300 taken from him, advised him that this was possible if repayment of the money was a condition of the sentence if Scruggs were found guilty.

Scruggs argues that not providing this information to him prior to trial amounts to a violation of *Brady v. Maryland*.[30] Pretermitting the issue of whether such evidence is impeaching, in order to prevail on his *Brady* claim, Scruggs must show that "had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different."[31] He has failed to make such a showing in this case, and there was no error in the trial court's denial of his motion for new trial on this ground.

*Judgment affirmed. Smith, P. J., and Dillard, J., concur.*

DECIDED MAY 13, 2011.

*Thomas M. West*, for appellant.
*Patrick H. Head, District Attorney, James B. Glasgow, Anna G. Cross, Assistant District Attorneys*, for appellee.

---

shall be sworn as any other witness and may be examined and cross-examined as any other witness."

[29] *Arnold v. State*, 305 Ga. App. 45, 51 (4) (699 SE2d 77) (2010); *Adcock v. State*, 279 Ga. App. 473, 474 (2) (631 SE2d 494) (2006); *Kimmons v. State*, 267 Ga. App. 790, 791 (1) (a) (600 SE2d 783) (2004).

[30] 373 U. S. 83, 87 (83 SC 1194, 10 LE2d 215) (1963).

[31] (Citation and punctuation omitted.) *Morris v. State*, 284 Ga. 1, 3 (2) (662 SE2d 110) (2008).