A06A1919. ANAYA-PLASENCIA v. THE STATE.
(642 SE2d 401)

BERNES, Judge.

A Gwinnett County jury convicted Juan Luis Anaya-Plasencia of involuntary manslaughter and reckless conduct. Anaya-Plasencia appeals from the denial of his motion for new trial contending that the trial court erred (1) in finding that his pretrial statement to police was voluntary even though police did not inform Anaya-Plasencia of his right to speak with a consular officer under the Vienna Convention; (2) in prohibiting his cross-examination of a trial witness about the failure to inform Anaya-Plasencia of his rights under the Vienna Convention; and (3) in denying his motion for a mistrial based on

---

[10] OCGA § 15-11-94 (a).

[11] (Citation omitted.) *In the Interest of A. B.*, supra at 138 (2).

[12] Id.; see also *In the Interest of S. G.*, supra.

allegedly improper victim impact argument by the state. For the reasons that follow, we affirm.

Viewed in the light most favorable to the verdict, *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), the evidence shows that Anaya-Plasencia, a 17-year-old Mexican national, was friends with the victim, his brother, and four other men who resided together in a Lilburn townhouse. They all were citizens of Mexico and worked together as painters. On the evening of January 1, 2003, Anaya-Plasencia went to the Lilburn townhouse and drank beer with his friends. At some point during the evening, Anaya-Plasencia pulled out a revolver and began playing with it. When the victim's brother told Anaya-Plasencia not to play with the gun, Anaya-Plasencia pointed the gun at him, stating, "Do you want me to shoot you?" The brother grabbed Anaya-Plasencia and took him to an upstairs bedroom, where the victim was lying down on a bed.

Anaya-Plasencia told the brother to let him go, he was "playing." The brother responded, "well, don't play around with that," and let Anaya-Plasencia go. Anaya-Plasencia disregarded the brother's admonition, spun the gun's cylinder, then pointed the gun at the brother and pulled the trigger. The gun did not fire that time, but it did moments later when Anaya-Plasencia spun the gun's cylinder again, pointed the gun at the victim and pulled the trigger. The bullet from the weapon struck the victim in the face and killed him.

After the shooting, the brother wrestled Anaya-Plasencia down the stairs. Insisting that the shooting was accidental, Anaya-Plasencia shouted, "I didn't do it on purpose. . . . We were playing." During this confrontation, Anaya-Plasencia shot at the victim's brother again, but missed. Anaya-Plasencia fled from the scene, but was apprehended a short distance away.

After his apprehension, Anaya-Plasencia gave a statement to police in which he admitted that he had been drinking at the apartment and playing with a gun. However, he claimed to have had no memory of the shooting or how it occurred.

1. Anaya-Plasencia contends that the trial court erred in denying his motion to suppress his pretrial statement to police and in finding that his statement was voluntarily given even though he was not advised of his right to consulate notification under Article 36 (1) (b) of the Vienna Convention.[1] We find no error.

---

[1] Pursuant to Article 36 of the Vienna Convention, "when a national of one country is detained by authorities in another, the authorities must notify the consular officers of the detainee's home country if the detainee so requests. Article 36 (1) (b) further states that the said authorities shall inform the person concerned (i.e., the detainee) without delay of his rights under this sub-paragraph." (Citation and punctuation omitted.) *Sanchez-Llamas v. Oregon*, ___ U. S. ___ (I) (A) (126 SC 2669, 2675, 165 LE2d 557) (2006). See also Vienna Convention on

In *Sanchez-Llamas v. Oregon*, ___ U. S. ___ (126 SC 2669, 165 LE2d 557) (2006), the United States Supreme Court held that "even assuming the [Vienna] Convention creates judicially enforceable rights, . . . suppression is not an appropriate remedy for a violation of Article 36." Id. at 2674. This is true particularly since "[t]he Convention does not prescribe specific remedies for violations of Article 36," id. at 2678 (II) (A), and in fact, Article 36 does not guarantee defendants any assistance at all, but rather "secures only a right of foreign nationals to have their consulate *informed* of their arrest or detention — not to have their consulate intervene." (Emphasis in original.) Id. at 2681 (II) (A). Instead, "[a] foreign national detained on suspicion of crime, like anyone else in our country, enjoys under our system the protections of the Due Process Clause. Among other things, he is entitled to an attorney, and is protected against compelled self-incrimination." Id. at 2681-2682 (II) (A). Finding that "Article 36 adds little to these 'legal options,'" the Supreme Court concluded that it is unnecessary to apply the exclusionary rule for a violation of this provision of the Vienna Convention. Id. at 2682 (II) (A). The Court nevertheless noted that "[a] defendant can raise an Article 36 claim as part of a broader challenge to the voluntariness of his statements to police." Id. See also *Ramirez v. State*, 279 Ga. 569, 575-576 (7) (619 SE2d 668) (2005).

Here, Anaya-Plasencia's Article 36 claim was raised at the *Jackson-Denno* hearing and heard by the trial court as part of his broader challenge to the voluntariness of his statement. Significantly, Anaya-Plasencia, who did not testify at the hearing and offered no other evidence, failed to show how the alleged Article 36 violation rendered his statement involuntary.

"[W]hether a waiver of rights and a subsequent statement have been voluntary and knowing depends on the totality of the circumstances." *Reinhardt v. State*, 263 Ga. 113, 115 (3) (b) (428 SE2d 333) (1993). The record reveals that Anaya-Plasencia was 17 years of age at the time of the interview. Immediately prior to the interview, Anaya-Plasencia was given an opportunity to go to the restroom and was provided drinking water. The interview was conducted in Spanish by a detective whose native language was Spanish. Anaya-Plasencia was advised by the detective that he was under arrest for events surrounding the death of the victim and was advised verbally and in writing of his *Miranda* rights. The detective, while unsure of Anaya-Plasencia's educational level, determined that he could read by having him read out loud a Spanish waiver of rights form.

Consular Relations and Optional Protocol on Disputes, April 24, 1963, art. 36 (1) (b), 21 U.S.T. 77.

Anaya-Plasencia signed the waiver and agreed to speak with the detective. At the *Jackson-Denno* hearing, the detective testified that Anaya-Plasencia appeared to understand his rights, that he never asked for counsel and that no promises or threats were made to induce his statement.

Anaya-Plasencia nevertheless contends that the statement was involuntary because he was not interviewed until 5:00 in the morning. He also argues that since he had been drinking heavily on the night of the shooting, he may have still been intoxicated at the time of the interview. We disagree. The fact that Anaya-Plasencia was not interviewed until some five hours after his arrest did not render his statement involuntary. According to the detective, the interview was delayed because he was gathering information from other witnesses that was relevant to his interview with Anaya-Plasencia. More importantly, the detective testified that Anaya-Plasencia had slept prior to the interview and was alert during the interview, which lasted no more than 45 minutes. The detective also testified that Anaya-Plasencia had not consumed any alcohol after he was taken into custody and that he did not appear to be under the influence of alcohol or drugs at the time of the interview. According to the detective, Anaya-Plasencia cogently responded to the questions posed.

"When the outcome of a motion to suppress depends on the credibility of the witnesses or on disputed facts, and the trial court has not committed an error of law, the court's ruling will not be disturbed on appeal." (Punctuation and footnote omitted.) *State v. Sanders*, 274 Ga. App. 393, 394 (617 SE2d 633) (2005). Upon review, we accept the trial court's factual and credibility determinations and inferences as long as there is evidence in the record to support them. Id. Under the circumstances presented here, the trial court was authorized to find that Anaya-Plasencia's statement to police was voluntarily given. The denial of the motion to suppress was proper. See *Allen v. State*, 275 Ga. 64, 67 (2) (561 SE2d 397) (2002) (defendant's statement deemed voluntary although interview began early in the morning, several hours after arrest, and when defendant stated that he was tired); *State v. Roberts*, 273 Ga. 514, 515 (2) (543 SE2d 725) (2001) (teenage defendant's statement deemed voluntary when there was no evidence of intimidation based upon his relative youth, and the interview occurred at night and lasted for only 30 minutes); *Reid v. State*, 171 Ga. App. 52, 53 (3) (318 SE2d 782) (1984) (defendant's statement deemed voluntary when evidence contradicted claim that defendant was under the influence of drugs or alcohol at the time of interview); *Watson v. State*, 159 Ga. App. 618, 620 (2) (284 SE2d 636) (1981) (same).

2. Anaya-Plasencia next contends that the trial court erred in prohibiting him from cross-examining the investigating detective

about the detective's failure to advise Anaya-Plasencia of his rights under the Vienna Convention. He argues that his cross-examination of the detective was relevant to the jury's determination of the voluntariness of his pretrial statement.

"The right of a thorough and sifting cross-examination shall belong to every party as to the witnesses called against him." OCGA § 24-9-64. Yet, when defense counsel cross-examined the interrogating detective regarding his failure to advise Anaya-Plasencia of his rights under Article 36 of the Vienna Convention, the state objected on the grounds of relevance based upon the fact that the trial court had previously ruled that the statement was voluntary and admissible. The trial court sustained the objection and further instructed the jury to disregard defense counsel's prior questions and the witness' responses on the subject.

Contrary to the state's argument, "the ultimate question of the voluntary character of the statement and its truthfulness [was] for the jury. . . ." *Spence v. State*, 252 Ga. 338, 343 (3) (313 SE2d 475) (1984). Since an Article 36 violation may be brought "as part of a broader challenge to the voluntariness of [a defendant's pretrial] statements to police," defense counsel's cross-examination on the subject was arguably relevant. See *Sanchez-Llamas*, 126 SC at 2682 (II) (A); *Ramirez*, 279 Ga. at 575-576 (7).

Assuming without deciding that the trial court's restriction of cross-examination on this issue was erroneous, we nevertheless find the error harmless. "If it is highly probable that the error did not contribute to the judgment then the error is harmless." (Citations and punctuation omitted.) *Snelling v. State*, 215 Ga. App. 263, 266 (1) (c) (450 SE2d 299) (1994). Considering the overwhelming evidence of Anaya-Plasencia's guilt, including the uncontroverted evidence that he brandished and fired the weapon at the deceased victim and his brother, it is highly probable that the error did not contribute to the judgment. *Mitchell v. State*, 228 Ga. App. 74, 76 (2) (491 SE2d 127) (1997).

3. Finally, Anaya-Plasencia contends that the trial court erred in denying his motion for a mistrial based on allegedly improper victim impact argument by the state during the guilt-innocence phase of trial.[2] The prosecutor argued:

[t]his case is about a little girl in Mexico in a small town, who had trouble walking. This case is about a little girl whose

---

[2] "Victim-impact evidence goes to the impact of the crime on the victim, the victim's family, or the community." *In the Interest of W. N. J.*, 268 Ga. App. 637, 639 (1) (602 SE2d 173) (2004). Such evidence is generally admissible in the sentencing phase of a trial. OCGA § 17-10-1.1.

daddy couldn't afford the proper medical treatment for her feet. This case is about a little girl whose daddy came to the United States so he could make a better way for his daughter. This case is about a little girl who is going to grow up without a father.

Pretermitting whether these "limited remarks describing [the victim] and [his] family . . . constitute impermissible victim impact evidence," *Hammond v. State*, 264 Ga. 879, 886 (8) (b) (452 SE2d 745) (1995), we find it highly improbable that the challenged argument contributed to the judgment.[3] See also *Ward v. State*, 262 Ga. 293, 297 (6) (g) (417 SE2d 130) (1992) ("It was not impermissible to tell the jury that the victim's daughter no longer had a [father].").

*Judgment affirmed. Barnes, C. J., and Andrews, P. J., concur.*

DECIDED FEBRUARY 23, 2007.

*Mark A. Yurachek*, for appellant.

*Daniel J. Porter, District Attorney, Nancy J. Dupree, Assistant District Attorney*, for appellee.

---

[3] This is particularly true in view of the fact that evidence that the victim had moved to the United States to procure better medical treatment for his daughter who had flat feet was admitted without objection at trial.