A09A2261. EMORY v. THE STATE.

(688 SE2d 682)

PHIPPS, Judge.

Following a bench trial, Jondreaya Emory was convicted of burglary and armed robbery. On appeal, Emory claims that the trial court erred by admitting into evidence a statement she made to law enforcement officers. She also claims that the evidence was insufficient to support her convictions. Finding no merit in either claim, we affirm.

The evidence showed that on November 4, 2004, a male and a female entered Johnny Lee Price's home and robbed him. The male, whom Price knew as Raymond, put a gun to Price's neck and threatened to shoot him, and the female put her hand over Price's mouth. The male then took Price's wallets, which both contained money, and left with the female. Price described the female as a tall, stout young lady.

Raymond Childs testified that he and Emory saw Price with a lot of money and talked about how they were going to get it. He stated that he and Emory went into Price's house, took his wallets and left.

---

[7] *Rogers*, supra at 865.

[8] See *Thomas*, supra; *Rogers*, supra.

[9] 240 Ga. App. 783 (525 SE2d 166) (1999).

[10] Id.

[11] See *St. Fleur*, supra at 852.

He and Emory then split the money, and he threw the wallets away. Childs entered a guilty plea to charges stemming from this incident shortly before testifying.

Several days after this incident, the city police chief and another officer interviewed 16-year-old Emory, with her mother present. After being given *Miranda* warnings, Emory stated that she had been walking down the street with Childs and he told her he had something to do. She followed him to a trailer and waited outside. When Childs came out, he showed her a wallet, which he then threw into a drain. Emory testified at trial that she was with Childs on November 4 and confirmed the information in her statement. She further testified that Childs took the money from the wallet and used some of it to buy her something to eat. She denied that he gave her any of the money.

1. Emory claims that the trial court erred by admitting her statement because it was not made voluntarily.

Before the statement was admitted, the state presented evidence that an officer read Emory her *Miranda* rights and that she signed the waiver of those rights while the officer, the police chief and Emory's mother were present. The police chief and officer testified that they did not threaten Emory in any way or make any promises to her in order to get her to talk to them. They further testified that Emory's mother was present throughout the interview. Emory testified that the officers told her, outside her mother's presence, that she would serve 20 years or more if she did not give a statement. The trial court admitted the statement, concluding that Emory was properly advised of her rights and that her statement was freely and voluntarily given.

A juvenile's statement is admissible if, under the totality of the circumstances, the juvenile made a voluntary and knowing waiver of her constitutional rights.[1]

> The factors a court considers include: The age of the accused; the education of the accused; the knowledge of the accused as to the substance of the charge and nature of h[er] rights to consult with an attorney; whether the accused was held incommunicado or allowed to consult with relatives or an attorney; whether the accused was interrogated before or after formal charges had been filed; methods used in interrogation; length of interrogation; whether [the] accused refused to voluntarily give statements on prior occa-

---

[1] *Attaway v. State*, 244 Ga. App. 5, 6 (534 SE2d 580) (2000).

sions; and whether [the] accused repudiated an extrajudicial statement at a later date.[2]

Here, Emory was 16 at the time of questioning and had completed the ninth grade. Our courts have approved statements from defendants of similar and lower ages, with less education.[3] Emory was not under arrest when she was questioned, and she had been informed of her right to an attorney. Although Emory disputes that her mother was present for the entire interview and contends that she was told she would serve 20 years or more if she did not give a statement, the officers testified otherwise, and credibility determinations by the court at a voluntariness hearing will not be disturbed unless clearly erroneous.[4] Further, the absence of a parent during an interview does not necessarily make a juvenile's statement inadmissible.[5] Although there was no direct testimony regarding the interview's length, the written statement was given 20 minutes after Emory signed the *Miranda* rights waiver. Finally, Emory testified at trial and confirmed the information given in her statement.

"The question of whether or not a defendant is capable or incapable of making a knowing and intelligent waiver of his rights is to be answered by the trial judge and will be accepted by this court unless such determination is clearly erroneous."[6] Here, the trial court was authorized to conclude that, under the totality of the circumstances, Emory's custodial statement was admissible into evidence.[7]

2. In related claims, Emory contends that the trial court's finding of guilt was contrary to the evidence, without evidence to support it, decidedly against the weight of the evidence, and contrary to law and the principles of justice and equity. "When, as here, the general grounds are raised, there is nothing for appellate review except the sufficiency of the evidence."[8]

> On appeal from a criminal conviction following a bench trial, [Emory] no longer enjoys a presumption of innocence, and we view the evidence in a light favorable to the trial court's finding of guilt, giving due regard to the trial court's opportunity to judge witness credibility. This Court does not

---

[2] *McKoon v. State*, 266 Ga. 149, 150 (2) (465 SE2d 272) (1996) (citation omitted).

[3] See *Marshall v. State*, 248 Ga. 227, 229 (3) (282 SE2d 301) (1981); *Williams v. State*, 238 Ga. 298, 301-303 (1) (232 SE2d 535) (1977).

[4] *McKoon*, supra at 151.

[5] Id.

[6] *Marshall*, supra at 231 (citation and punctuation omitted).

[7] *McKoon*, supra; see *Attaway*, supra at 7.

[8] *Daniel v. State*, 275 Ga. App. 70, 72 (2) (619 SE2d 770) (2005) (citation omitted).

weigh the evidence or determine the credibility of witnesses. Rather, we determine only if there is enough evidence from which a rational trier of fact could have found the accused guilty beyond a reasonable doubt.[9]

Emory argues that the evidence was insufficient because Childs's testimony about her involvement in the robbery was not corroborated. She correctly notes that, in felony cases, a defendant may not be convicted solely on the uncorroborated testimony of an accomplice.[10] But it is well established that slight evidence of corroboration connecting the defendant to the crime satisfies the corroboration requirement, and that evidence may be entirely circumstantial.[11]

> It is not required that the corroboration of the testimony given by an accomplice shall of itself be sufficient to warrant a verdict of guilty, or that the testimony of the accomplice be corroborated in every particular. The amount of corroborative extraneous evidence necessary to connect the accused with the commission of the offense lies peculiarly within the province of the factfinder.[12]

Price corroborated some particulars of Childs's testimony — he recounted that a young male named "Raymond" and a female entered his house and took his wallets. He described the female as a tall, stout young lady and, as noted by the trial court, this description was supported by information on Emory's statement regarding her height, weight and age. And Emory's statement and testimony proved that she was at the scene, knew Childs had taken the money, and allowed him to spend part of it on her.[13] The trial court was authorized to conclude that this evidence sufficiently corroborated Childs's testimony.

Reviewing the evidence in the light most favorable to the trial court's finding of guilt, we conclude that the evidence was sufficient to authorize the court's determination that Emory was guilty beyond a reasonable doubt as a party to the crimes of burglary and armed

---

[9] *Yglesia v. State*, 288 Ga. App. 217 (653 SE2d 823) (2007) (citations and punctuation omitted).

[10] OCGA § 24-4-8.

[11] *Gibson v. State*, 267 Ga. App. 473, 474 (1) (600 SE2d 417) (2004).

[12] *In the Interest of J. B.*, 223 Ga. App. 429, 431 (1) (e) (477 SE2d 874) (1996) (citation and punctuation omitted).

[13] See *Moore v. State*, 245 Ga. App. 641, 643 (1) (a) (537 SE2d 764) (2000) (an accused's statement can serve to corroborate her accomplice's inculpatory testimony).

robbery.[14]

*Judgment affirmed. Smith, P. J., and Bernes, J., concur.*

DECIDED DECEMBER 21, 2009.

*David E. Morgan III*, for appellant.
*Denise D. Fachini, District Attorney, Cheri L. Nichols, Matthew P. Brown, Assistant District Attorneys*, for appellee.

---

[14] See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979); *Mosier v. State*, 223 Ga. App. 75, 76 (476 SE2d 842) (1996).