### A10A2042. DANIELS v. THE STATE.
### A10A2043. BEARD v. THE STATE.
(703 SE2d 41)

BLACKBURN, Senior Appellate Judge.

Following a jury trial, co-defendants Derrick Daniels and Terrance Beard were convicted on two counts of armed robbery,[1] three counts of hijacking a motor vehicle,[2] three counts of aggravated assault,[3] two counts of theft by taking,[4] one count of theft by receiving,[5] and three counts of possession of a firearm during the commission of a felony.[6] Beard was also convicted by the same jury on an additional count of theft by taking, for which Daniels was not charged. Both appeal their convictions and the denial of their motions for new trial, arguing that the evidence was insufficient to support their convictions and that the trial court erred in admitting similar transaction evidence, in charging the jury on the full text of the hijacking statute, and in admitting victim impact evidence during the guilt-innocence phase of trial. In addition, Beard contends

---

[1] OCGA § 16-8-41 (a).
[2] OCGA § 16-5-44.1 (b).
[3] OCGA § 16-5-21 (a) (1).
[4] OCGA § 16-8-2.
[5] OCGA § 16-8-7 (a).
[6] OCGA § 16-11-106 (b) (1).

that the trial court erred in denying his motion to sever his trial from that of his co-defendant. Because the charges arose from the same incidents and same set of facts and because the appellants were tried together, we have consolidated their separate appeals for review. For the reasons set forth below, we affirm in both cases.

"On appeal from a criminal conviction, the evidence must be construed in a light most favorable to the verdict and [appellants] no longer enjoy[ ] a presumption of innocence." (Punctuation omitted.) *Dennis v. State*.[7] In evaluating the sufficiency of the evidence to support a conviction, we do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendants guilty of the charged offenses beyond a reasonable doubt. *Jackson v. Virginia*.[8]

So viewed, the record shows that in the early evening on September 22, 2007, the owner of a BP gas station convenience store had walked outside to his store's parking lot to put some items in his car when a white Lexus pulled up next to him. As the Lexus stopped, three young African-American men exited the car, pointed a handgun and a shotgun at the store owner, and demanded his car keys. When the owner refused, one of the men hit him in the head with the butt end of the shotgun, at which point the owner fled back into his store and yelled for his wife, who was working with him that night, to call 911. While his wife called the police, the store owner saw the white Lexus leave his parking lot and pull into the parking lot of a Chevron gas station across the street.

A few moments after the assault on the BP convenience store owner, a customer of the Chevron gas station across the street was exiting the store when he noticed two young African-American men near his truck. As he approached, one of the men pointed a handgun at the customer and demanded the keys to his truck. The customer refused and ran back into the convenience store to call the police. While doing so, he saw the two men get into a white car, which was being driven by a third man and which then sped out of the gas station's parking lot.

A short time later that same evening, a young woman went to purchase some food from a fast-food restaurant, which was adjoining a Citgo gas station convenience store and which was located a short distance from the two gas stations where the earlier incidents had occurred. After ordering her food, the woman went back to her SUV to move it so that it would not be blocking any of the gas station's pumps. Just as the woman placed her keys in her SUV's ignition, a

[7] *Dennis v. State*, 294 Ga. App. 171 (669 SE2d 187) (2008).
[8] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

white Lexus pulled up next to her, and a young African-American man sitting in the front passenger seat pointed a handgun at her and ordered her out of her vehicle. The young man then demanded her keys and her purse. As she complied with his demands, the woman saw another young African-American man in the back seat of the white Lexus brandishing a shotgun and a third African-American man in the driver's seat. At that point, the young man with the handgun got into the driver's seat of the woman's SUV, and the two vehicles exited the gas station's parking lot. Subsequently, the woman ran inside the convenience store and called the police.

Not long after the young woman's SUV was stolen, a woman, who lived on a dead-end gravel road close to the gas stations where the earlier crimes had occurred, heard a loud crashing noise outside of her home. When the woman opened her door to see what caused the noise, she saw a vehicle's brake lights near her gravel driveway. The woman called out to ask what was going on and heard a young male's voice respond that it was "just a little accident" and "nothing to be concerned about." Unconvinced by the response, the woman called her neighbor to see if her neighbor knew what was happening. The neighbor said she did not and that she would call the police, at which point the woman went out to her car with the intention of illuminating the driveway with her car's headlights. As she walked outside, the woman saw a green SUV traveling in reverse at a high speed. The SUV then stopped and was momentarily stuck in a ditch before speeding away back toward the main road. After the SUV left, the woman saw a white Lexus in another ditch with its trunk open and with damage to its rear window. Minutes later, several police arrived on the scene.

By this time, police in the area had been told to be on the lookout for the green SUV that had been hijacked at gunpoint from the gas station. Not long afterward, police officers spotted the SUV and began pursuing it as it wove in and out of traffic. As the chase continued, the driver of the SUV attempted to turn left onto a residential street but lost control of the vehicle, which caused it to flip and roll several times before coming to rest in a wooded area. The police arrived shortly thereafter, and found a slightly injured young man, who was later identified as 14-year-old Justice Boston, near the wrecked SUV. Inside the SUV, the police found a loaded shotgun and the SUV owner's purse. The police also recovered a handgun in the wooded area near the wrecked SUV.

Believing that other suspects had escaped the SUV crash and were on foot, the police set up a security perimeter around the area. Approximately 30 minutes later, an officer who was assisting in establishing the security perimeter stopped a vehicle, in which Derrick Daniels was a passenger. Although the driver and the front

seat passenger were calm and were curious as to why the police were in the area, the officer noticed that Daniels was perspiring profusely and that he had numerous cuts that were still bleeding. After requesting that Daniels exit the vehicle, the officer also noticed that his pants and shoes were muddy. Based on his observations, the officer believed that Daniels was one of the suspects who had hijacked the SUV and therefore detained him. A few hours later, another police officer who was patrolling the area saw a pickup truck driving erratically and without headlights. Consequently, the officer initiated a traffic stop of the vehicle. As the officer approached the truck, the driver, who was later identified as Terrance Beard, exited the vehicle. Without any order from the officer, Beard raised his hands above his head, lay down on the pavement, and admitted to being involved in the earlier chase. In addition, Beard admitted to the officer that he had stolen the pickup truck that he was driving. The officer contacted the owners of the truck and confirmed that they lived nearby and that their truck had been stolen some time in the last couple of hours.

Daniels and Beard were charged in separate indictments with two counts of armed robbery, three counts of hijacking a motor vehicle, three counts of aggravated assault, two counts of theft by taking, one count of theft by receiving, and three counts of possession of a firearm during the commission of a felony. Beard was also charged with an additional count of theft by taking the pickup truck, in which he was ultimately stopped. At their joint trial, each of the victims testified, and several police officers testified regarding the chase and arrest of the suspects. One of the investigating officers testified that after Daniels was arrested he provided a statement, in which he admitted that he was driving around with the other suspects that day in the white Lexus and that he may have handled the shotgun but claimed that he was dropped off before any of the crimes occurred. The same officer also testified that Beard provided a statement, in which he admitted to being with the others in the white Lexus on the day in question but claimed that he was asleep during the crimes. Another police officer testified that the police recovered a cell phone that belonged to Daniels and that the cell phone's camera contained a picture of the shotgun that was found in the stolen SUV.

The State also proffered the testimony of Tychaune Douglas. Douglas testified that on the day before the incident, he and his girlfriend were driving to a mall in DeKalb County in his mother's white Lexus when they were stopped at gunpoint by several African-American men, whom he could not identify, and were robbed of the car. In addition, the State called Justice Boston, who had been arrested at the scene of the SUV wreck, to testify against Daniels and

Beard. Boston testified that he, Daniels, and Beard had all participated in the crimes that occurred on September 22, 2007, and he recounted the details of those events.[9] At the conclusion of the trial, the jury found both Daniels and Beard guilty on all charges in their respective indictments. Subsequently, both Daniels and Beard filed motions for new trial, which the trial court denied. These appeals followed.

1. Daniels and Beard contend that the evidence was insufficient to support their convictions, arguing that the jury improperly found them guilty based solely on the uncorroborated testimony of Justice Boston. We disagree.

Under Georgia law, a defendant may not be convicted solely upon the uncorroborated testimony of an accomplice. OCGA § 24-4-8. However, "it is well established that slight evidence of corroboration connecting the defendant to the crime satisfies the corroboration requirement, and that evidence may be entirely circumstantial." *Emory v. State*.[10] "[E]vidence of the defendant's conduct before and after the crime was committed may give rise to an inference that he participated in the crime." (Punctuation omitted.) *Jones v. State*.[11] Furthermore,

> [i]t is not required that the corroboration of the testimony given by an accomplice shall of itself be sufficient to warrant a verdict of guilty, or that the testimony of the accomplice be corroborated in every particular. The amount of corroborative extraneous evidence necessary to connect the accused with the commission of the offense lies peculiarly within the province of the factfinder.

(Punctuation omitted.) *Emory*, supra, 301 Ga. App. at 774 (2). See *Savage v. State*.[12]

Here, the evidence corroborated some particulars of Boston's testimony implicating Daniels and Beard in the charged crimes. All three of the victims from the three separate gas stations provided descriptions of their assailants that generally matched Boston, Daniels, and Beard. All three victims also testified that their assailants brandished a handgun and a shotgun, which were indeed the weapons that were found at the scene where the stolen SUV crashed

---

[9] Boston did not testify that he, Daniels, or Beard committed the September 21, 2007 hijacking of the white Lexus but claimed that Daniels was driving the vehicle when he picked him up on September 22, 2007.

[10] *Emory v. State*, 301 Ga. App. 771, 774 (2) (688 SE2d 682) (2009).

[11] *Jones v. State*, 302 Ga. App. 147, 149 (1) (a) (690 SE2d 460) (2010).

[12] *Savage v. State*, 298 Ga. App. 350, 353-354 (3) (679 SE2d 734) (2009).

and where Boston was arrested. Both Daniels and Beard were arrested in an area close to the SUV crash site, and at the time of their arrests, both bore scratches and cuts that were consistent with injuries one could suffer from a motor vehicle accident. Additionally, Daniels admitted to driving around with Boston and Beard in the white Lexus shortly before the crimes occurred and also admitted to earlier handling the recovered shotgun. Similarly, after being stopped in a truck, which he admitted he had stolen, Beard admitted to being in the white Lexus and the SUV while the crimes were being committed but claimed that he was asleep most of the time. Accordingly, the evidence corroborating Boston's testimony was sufficient to authorize the jury's determination that Daniels and Beard were guilty beyond a reasonable doubt as parties to the crimes charged. See *Jones*, supra, 302 Ga. App. at 149 (1) (a); *Emory*, supra, 301 Ga. App. at 774-775 (2).

2. Daniels and Beard contend that the trial court erred in admitting testimony concerning the hijacking of the white Lexus on the day before the gas station incidents. Specifically, they argue that such testimony constituted similar transaction evidence that was improperly admitted without a pre-trial hearing conducted pursuant to Uniform Superior Court Rule 31.3. We disagree.

Daniels and Beard were both indicted on one count of theft by receiving stolen property, that property being the white Lexus automobile. Under OCGA § 16-8-7 (a), "[a] person commits the offense of theft by receiving stolen property when he receives, disposes of, or retains stolen property which he knows or should know was stolen." The State introduced the testimony of Tychaune Douglas concerning the hijacking of that vehicle to show that it was stolen. Furthermore, "the [S]tate is entitled to inform the jury of all the circumstances surrounding the commission of the crime or crimes charged and we find no error in admitting this evidence as part of the res gestae even though it may have incidentally placed defendant[s'] character in evidence." (Punctuation omitted.) *Sprattling v. State*.[13]

3. Daniels and Beard contend that the trial court erred in its charge to the jury on the offense of hijacking a motor vehicle. We disagree.

"In reviewing an allegedly erroneous jury instruction, we apply the plain legal error standard of review." (Punctuation omitted.) *Johnson v. State*.[14] As previously noted, both Daniels and Beard were indicted on three counts of hijacking a motor vehicle. For each of the

[13] *Sprattling v. State*, 218 Ga. App. 576, 576-577 (1) (462 SE2d 461) (1995).
[14] *Johnson v. State*, 299 Ga. App. 706, 711 (2) (683 SE2d 659) (2009).

three counts, the indictment provided that the defendant "did . . . unlawfully . . . while in possession of a firearm obtain a motor vehicle from the presence of another." The only difference in the counts was that each referenced a different victim. The Court charged the jury on the entirety of the hijacking statute as follows: "A person commits the offense of hijacking a motor vehicle when such person while in possession of a firearm or weapon obtains a motor vehicle from the person or presence of another by force and violence or intimidation or attempts or conspires to do so."

Daniels and Beard contend that the trial court erred in charging the jury on the full text of the hijacking statute, because they were charged in their respective indictments only with having completed the crime, not attempting to commit it. Specifically, they argue that since they were not indicted for attempting to obtain a motor vehicle by force, the trial court should not have given the jury the opportunity to convict them of attempting to obtain a motor vehicle by charging the entire statute. Nevertheless, a person indicted for a specific crime may be convicted of attempt of the specific crime without an attempt charge being listed in the indictment. OCGA § 16-4-3. See *Jenkins v. State*.[15] The specific statutory inclusion of attempt as a method of committing the crime of hijacking a motor vehicle does not alter the general rule that an attempt can be proven and charged without being indicted. See *Middlebrooks v. State*[16] (because conspiracy can be proven and charged without being indicted, the trial court did not err in charging the jury on the entirety of hijacking statute despite the fact that defendant was only charged with having completed the crime).

Daniels and Beard further argue that the trial court compounded its error in charging the entire hijacking statute by failing to define attempt, but they have waived review of this issue. Neither Daniels nor Beard requested a written charge on the definition of attempt. In fact, during the charge conference, both Daniels and Beard opposed the State's request that the court define attempt, and neither objected when the State eventually agreed to withdraw that request. "[E]ven the review of substantial error under OCGA § 5-5-24 (c) is not available when the giving of an instruction, or the failure to give an instruction, is induced during trial by counsel for the complaining party or specifically acquiesced in by counsel." (Punctuation omitted.) *Brewer v. State*.[17] Thus, Daniels and Beard waived this issue. See *Johnson*, supra, 299 Ga. App. at 711 (2).

---

[15] *Jenkins v. State*, 284 Ga. 642, 645 (2) (670 SE2d 425) (2008).

[16] *Middlebrooks v. State*, 241 Ga. App. 193, 195 (3) (526 SE2d 406) (1999).

[17] *Brewer v. State*, 280 Ga. App. 582, 583 (2) (634 SE2d 534) (2006).

Accordingly, the trial court did not err in its charge to the jury on the offense of hijacking a motor vehicle.

4. Daniels and Beard contend that the trial court erred in admitting victim impact evidence during the guilt-innocence phase of the trial. During the direct examination of the gas station convenience store owner, the State asked the owner if he still owned his business. Over defendants' objections, the owner testified that he suffered panic and anxiety caused by the incident, and, as a result, he decided to close his store. Pretermitting whether these limited remarks constitute impermissible victim impact evidence, we find it highly improbable that the store owner's challenged testimony contributed to the jury's verdict. See *Anaya-Plasencia v. State*[18] (prosecutor's argument that victim's daughter is going to grow up without a father in an involuntary manslaughter case found harmless). Thus, the trial court's admission of this evidence does not warrant reversal.

5. Beard contends that the trial court erred in denying his motion to sever his trial from that of his co-defendant, Daniels. We disagree.

"The decision whether to grant or deny a motion to sever is within the discretion of the trial court." *Harper v. State*.[19]

> In exercising its discretion the trial court should consider the following three factors: (1) whether the number of defendants will create confusion of the law and evidence applicable to each defendant; (2) whether there is a danger that evidence admissible against one defendant will be considered against another despite cautionary instructions to the contrary; and, (3) whether the defenses of the co-defendants are antagonistic to each other.

*Kennedy v. State*.[20] "The burden is on the defendant requesting the severance to do more than raise the possibility that a separate trial would give him a better chance of acquittal. He must make a clear showing of prejudice and a consequent denial of due process." (Punctuation omitted.) *Harper*, supra, 300 Ga. App. at 769 (12).

Here, "[t]he offenses were a series of continuous acts connected together both in time and the area in which committed and there was no likelihood of confusion." *Diaz v. State*.[21] See *Lankford v. State*.[22]

---

[18] *Anaya-Plasencia v. State*, 283 Ga. App. 728, 732-733 (3) (642 SE2d 401) (2007).

[19] *Harper v. State*, 300 Ga. App. 757, 769 (12) (686 SE2d 375) (2009).

[20] *Kennedy v. State*, 253 Ga. 132, 134 (2) (317 SE2d 822) (1984).

[21] *Diaz v. State*, 280 Ga. App. 413, 416 (634 SE2d 160) (2006).

[22] *Lankford v. State*, 295 Ga. App. 590, 592 (1) (672 SE2d 534) (2009).

Furthermore, as recounted by the police officer who interviewed both Daniels and Beard separately after their arrests, Daniels claimed that he was dropped off before any of the crimes occurred, and Beard claimed that he was present but did not participate in the crimes because he was asleep. Daniels's and Beard's defenses against the charges, therefore, were not directly antagonistic. Regardless, "the mere fact that co-defendants' defenses are antagonistic is not sufficient in itself to warrant separate trials. A showing of harm is necessary." (Citation and punctuation omitted.) *Diaz*, supra, 280 Ga. App. at 416. As Beard "fails to point to any testimony or other evidence introduced at the joint trial he received that could not have been introduced against him in a separate trial, he has failed to meet his burden of showing harm." (Punctuation omitted.) Id. Accordingly, the trial court did not abuse its discretion in denying Beard's motion to sever.

*Judgments affirmed. Barnes, P. J., and Senior Appellate Judge William LeRoy McMurray, Jr., concur.*

DECIDED OCTOBER 26, 2010.

*Teresa L. Smith, Thomas S. Robinson III*, for appellants.
*W. Kendall Wynne, Jr., District Attorney, Layla H. Zon, Assistant District Attorney*, for appellee.