A11A2395. CAMPBELL v. THE STATE.
(724 SE2d 24)

MIKELL, Presiding Judge.

After a jury trial, Robert Campbell was found guilty of hijacking a motor vehicle (Count 1), aggravated assault (Count 3), possession of a firearm during the commission of these crimes (Counts 2 and 4), armed robbery (Counts 5, 7, 9, and 10), possession of a firearm during the commission of one of the armed robberies (Count 8), and criminal attempt to commit the offense of armed robbery (Count 6). Campbell appeals his convictions on all counts, challenging the sufficiency of the evidence in his sole enumeration

of error. We affirm.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. This Court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*,[1] and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the [s]tate's case, we must uphold the jury's verdict.[2]

So viewed, the evidence shows that Campbell and, variously, three companions went on a four-day crime spree, from September 4 to 7, 2006, stopping at various locations in and around Valdosta and Lowndes County to commit crimes against six victims. Campbell and his companions carried three weapons, including a 9 millimeter handgun and a BB gun, both belonging to Campbell. The group, often with Campbell at the wheel, drove from one crime scene to another in cars owned by Campbell's grandmother: a Chrysler New Yorker and a red Pontiac Grand Prix. Upon reviewing security footage from a Video Warehouse, where the first incidents occurred, and a Wal-Mart, where some of the subsequent crimes occurred, police identified the Grand Prix and the Chrysler, respectively, as being present at or near times when crimes were committed at those locations; police also saw on the security videos men wearing clothing identified by victims and witnesses as being worn by Campbell and his companions during the commission of the crimes. Two of Campbell's companions, Antonio and Shamon Denson,[3] pled guilty to robberies connected with this case and testified at Campbell's trial; and Campbell also testified in his own behalf. Campbell's third companion, Jermaine Demps, did not testify.

As to the events which occurred outside the Video Warehouse, Campbell asserts insufficient evidence underlying his convictions for hijacking a motor vehicle, aggravated assault, and possession of a deadly weapon during the commission of those crimes. The evidence shows that the victim, Rick Carter, left the Video Warehouse and saw

---

[1] 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

[2] (Citations omitted.) *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004). See also *Craft v. State*, 252 Ga. App. 834, 839 (1) (558 SE2d 18) (2001) (appellate court determines whether evidence was sufficient for any rational trier of fact to find beyond a reasonable doubt that defendant was guilty of crimes charged).

[3] To avoid confusion, the Densons will be hereinafter identified by their first names.

Campbell, whom he identified at trial, standing beside his car. When Carter got into the car, Campbell insisted that the vehicle belonged to him and had been stolen, and demanded paperwork showing ownership. Carter testified that he thought Campbell "just wanted to take my car" and that when he resisted, Campbell rested a gun on the sill of the open driver's side window. Carter grabbed the gun, was pulled out of his car window, and tussled with Campbell on the ground. The gun discharged, shooting Carter in the leg. Campbell fled without taking the car. Campbell argues he did not draw the gun, but rather that it fell from his waistband and discharged accidentally, and points to his own and the victim's trial testimony that the shot could have been accidental. However, the victim, another witness, and even Campbell in an interview with police, said Campbell pulled out the gun. Campbell's companion, Shamon, testified that Campbell told him after the incident that he "pulled back and shot [Rick Carter]."

As to Campbell's conviction for hijacking a motor vehicle, "[a] person commits the offense of hijacking a motor vehicle when such person while in possession of a firearm . . . obtains a motor vehicle from the person or presence of another by force and violence or intimidation *or attempts* or conspires to do so."[4] Thus, the statute specifically includes attempt as a method of committing the crime of hijacking a motor vehicle;[5] and in order to commit attempt, the defendant must be found to have taken a "substantial step" toward the commission of the hijacking.[6] Campbell's assertion of ownership and the fact that Carter was pulled out of the vehicle constitute substantial steps toward the commission of a hijacking.[7] As to Campbell's conviction for aggravated assault, a person commits an assault when he either "[a]ttempts to commit a violent injury to the person of another; or . . . [c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury";[8] and "[a] person commits the offense of aggravated assault when he . . . assaults [another] . . . with a deadly weapon."[9] Campbell asserted ownership of the car and displayed a deadly weapon when Carter resisted. Carter's act in grabbing the gun and in tussling with

---

[4] (Emphasis supplied.) OCGA § 16-5-44.1 (b).

[5] *Daniels v. State*, 306 Ga. App. 577, 583 (3) (703 SE2d 41) (2010).

[6] OCGA § 16-4-1 ("A person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime").

[7] Cf. *Brown v. State*, 312 Ga. App. 489, 490-491 (1) (718 SE2d 847) (2011) (repeatedly pulling at a door handle constitutes a substantial step toward commission of offense of entering an automobile).

[8] OCGA § 16-5-20 (a) (1), (2).

[9] OCGA § 16-5-21 (a) (2).

the man who held it indicates a reasonable apprehension of harm, and Carter suffered serious injury from the shot. As to Campbell's convictions for possession of a firearm, it is undisputed that Campbell was in possession of a 9 millimeter handgun during the commission of these crimes,[10] and that he fled the scene.[11]

While the jury heard conflicting testimony as to whether Campbell drew his weapon and whether the shot was accidental, the issue of intent is for the jury:

> The jury . . . is solely responsible for determining the accused's intent in committing an act. . . . Criminal intent may be inferred from the circumstances, and the jury was not required to accept [Campbell's] trial testimony as true, but could judge his credibility and weigh his testimony against other evidence.[12]

The evidence in the case at bar authorized the jury to find Campbell guilty beyond a reasonable doubt of hijacking, aggravated assault, and possession of a firearm during the commission of both crimes (Counts 1, 2, 3, and 4).

As to the subsequent incidents, Campbell contends that the evidence was insufficient to support his convictions for the armed robberies of Brian Titus, Michael Branham, Sean McClune, and Martha Luna, and of the attempted armed robbery of Lena Sanders. This argument fails.

Campbell argues that the state failed to prove beyond a reasonable doubt that Campbell, "while brandishing a firearm, took the property of another," and because "[n]o alleged victim/witness . . . identified Mr. Campbell as the perpetrator of an offense against them." However, one need not be identified as the "perpetrator" of a crime to be found guilty of it. A person who did not directly commit a crime may be convicted on proof that a crime was committed and

---

[10] OCGA § 16-11-106 (b) (the offense of possession of a firearm during the commission of a crime occurs when "[a]ny person . . . shall have on or within arm's reach of his . . . person a firearm . . . during the commission of . . . [a]ny crime against or involving the person of another").

[11] See *Brown*, supra (fleeing the scene of the crime points to the question of guilt in a circumstantial manner).

[12] (Citations and punctuation omitted.) *Gordon v. State*, 294 Ga. App. 908, 910 (1) (670 SE2d 533) (2008) (evidence found sufficient even though defendant claimed he accidentally shot victim); accord *Winfrey v. State*, 286 Ga. App. 450, 452 (1) (b) (649 SE2d 561) (2007) (evidence sufficient where defendant claimed at trial that gun fired accidentally, but his earlier testimony indicated he fired the gun out the window before the victim jumped from the car). See also *Adams v. State*, 293 Ga. App. 377, 379 (1) (667 SE2d 186) (2008) (intent to use object as deadly or offensive weapon may be inferred from circumstances); OCGA § 16-2-6 (criminal intent will not be presumed, but trier of fact may find such intent upon consideration of words, conduct, demeanor, motive, and all other connected circumstances).

that he was a party to that crime;[13] his status as a party or aider and abettor of a crime is a matter for the trier of fact.[14]

> While mere presence at the scene of the commission of a crime is not sufficient evidence to convict one of being a party thereto, presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred.[15]

OCGA § 16-8-41 (a) does not mandate that a defendant "brandish" a firearm in order to be convicted of armed robbery. Instead, the statute provides that "[a] person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by *use of* an offensive weapon."[16] A defendant may be convicted of armed robbery and of possession of a firearm during the commission of a crime even if an accomplice carried the weapon, under the principle that the defendant was a party to the crime.[17]

As to Campbell's conviction for the armed robbery of Titus, the record shows that Titus was delivering food for a restaurant when, upon returning to his vehicle, he saw Antonio taking a food bag from his car. When Titus yelled, Antonio put the bag down, pointed a gun at him, and took $37 from him. Titus identified the gun, State's Exhibit 2. Antonio admitted to using a BB gun to rob Titus; identified State's Exhibit 2 as that gun; and said it belonged to Campbell. Police found this gun when they searched the Chrysler parked at Campbell's residence. Antonio and Campbell both testified that Campbell alerted Antonio when the victim started walking back to his car. Antonio testified that he divided Titus's money with Shamon and Campbell, and that both men knew where the money came from. Campbell denied receiving the money.

Under Georgia law, a defendant may not be convicted solely upon the uncorroborated testimony of an accomplice.[18] However,

> it is well established that slight evidence of corroboration

---

[13] OCGA § 16-2-21.

[14] *Burks v. State*, 268 Ga. 504, 505 (491 SE2d 368) (1997).

[15] (Citations and punctuation omitted.) *Stoe v. State*, 187 Ga. App. 171, 173 (3) (369 SE2d 793) (1988). Accord *Millender v. State*, 286 Ga. App. 331, 332 (1) (648 SE2d 777) (2007) (criminal intent inferred from defendant's conduct in acting as lookout and additional show of force during robbery).

[16] (Emphasis supplied.) OCGA § 16-8-41 (a).

[17] *Howze v. State*, 201 Ga. App. 96, 97 (410 SE2d 323) (1991). See also OCGA § 16-2-20 (defining elements of party to a crime).

[18] OCGA § 24-4-8; *Daniels*, supra at 581 (1).

connecting the defendant to the crime satisfies the corroboration requirement, and that evidence may be entirely circumstantial. . . . The amount of corroborative extraneous evidence necessary to connect the accused with the commission of the offense lies peculiarly within the province of the factfinder.[19]

Whether Campbell was a party to the crime against Titus was a question for the jury, which it chose to resolve against Campbell. We have affirmed a conviction for armed robbery where the defendant, while present during the crime, did not verbally threaten the victim; did not hold or shoot the gun used; and claimed no advance knowledge of the crime.[20] The fact that Campbell accompanied Antonio to the intended crime scene, served as Antonio's lookout, and shared in the proceeds, all indicate that Campbell was a party to the crime. Thus, the evidence in the case at bar authorized the jury to find Campbell guilty of the armed robbery of Titus (Count 5) beyond a reasonable doubt.[21]

The day after the Titus robbery, the evidence shows that Campbell called Antonio and asked, "Do you want to go back to Valdosta and rob somebody?" Campbell, Antonio, Shamon, and Demps then drove to Wal-Mart together. Antonio testified that the group saw Sanders walking alone and "decided we were going to go rob her," discussing the robbery both before and after it occurred. Antonio admitted pointing a gun at Sanders and telling her to "freeze," but she had no money. Campbell was convicted of attempted armed robbery, and on appeal, asserts insufficiency of the evidence, pointing to conflicting testimony as to his role in this incident. This argument fails. Another participant, Shamon, testified that Campbell did not leave the vehicle during the attempted armed robbery. Campbell told police that he drove the car and waited in the car, knowing that Antonio and Demps had gone to rob Sanders. At trial, however, Campbell denied knowing about the attempted robbery beforehand, but admitted learning about it afterward. It is for the jury to resolve any conflicts in the evidence,[22] and the evidence adduced at trial was sufficient for the jury to find Campbell guilty beyond a reasonable doubt of the attempted armed robbery of Sanders (Count 6).[23]

---

[19] (Citations and punctuation omitted.) *Daniels*, supra, citing *Emory v. State*, 301 Ga. App. 771, 774 (2) (688 SE2d 682) (2009).

[20] *Lunz v. State*, 174 Ga. App. 893, 894-895 (1) (332 SE2d 37) (1985).

[21] See id. at 895 (1).

[22] *Rankin*, supra, 278 Ga. at 705.

[23] See *Freeman v. State*, 284 Ga. 830, 832 (1) (672 SE2d 644) (2009) (evidence sufficient

Campbell also challenges the sufficiency of the evidence supporting his convictions in connection with the armed robbery of Branham. Antonio testified that after attempting to rob Sanders, the group "rode around . . . looking for somebody else to rob." They spotted Branham walking alone, and Shamon testified that Campbell, who was driving, said, "y'all think he got some money." Campbell pulled the car in front of Branham and stopped. Antonio pointed a gun at Branham and told him to "freeze and get down on the ground," while Demps went through the victim's pocket, taking his phone, about $7 in cash, and a credit card. Shamon served as lookout; Campbell waited with the car and served as the getaway driver. Campbell testified that he knew his companions "was gone jump out and do something to [Branham], but I didn't know what"; and that he "seen the dude on the ground, but I ain't see no gun."

Although the victim, Branham, did not testify, our Supreme Court has found evidence sufficient to show the elements of armed robbery even absent testimony by the victim.[24] The evidence in this case was sufficient for any rational trier of fact to find Campbell guilty beyond a reasonable doubt of the armed robbery of Branham (Count 7).[25] The evidence was likewise sufficient for the jury to find Campbell guilty of possession of a firearm during the commission of this crime (Count 8), under the principle of party to the crime, even though the weapon was brandished by his companion rather than by Campbell himself.[26]

The group next encountered McClune, a pizza deliveryman. McClune testified that as he approached his car, two men "penned" him between parked cars; and that one pointed a gun at him and demanded money. The men took about $20, a check, McClune's wallet, and his bank card. The men wore masks obscuring their faces, but one was wearing a black jersey with white numbers on it. Shamon and Antonio both testified that Campbell wore a black or gray jersey with the number 18 and was carrying the 9 millimeter handgun when he stopped the car and got out with Demps to follow McClune. When officers later searched Campbell's house, they found there a black jersey with the number 18 on it, a loaded 9 millimeter handgun, and McClune's bank card. The evidence was sufficient for any rational trier of fact to find Campbell guilty of the armed robbery

to uphold conviction for attempted armed robbery where defendant discussed robbery with perpetrator beforehand, drove perpetrator to scene, but did not actively participate in robbery). See also *Daniels*, supra.

[24] *McKisic v. State*, 238 Ga. 644, 645-646 (2) (234 SE2d 908) (1977).

[25] See *Lunz*, supra.

[26] See *Howze*, supra.

of McClune (Count 9) beyond a reasonable doubt.[27]

Early the next day, the group returned to Wal-Mart, where Luna was standing outside talking on a payphone. She testified that a man walked past several times, then returned with two other men and, screaming and cursing, demanded her purse and showed her a gun. Campbell admitted speaking to Luna, but denied involvement in the crime. Luna testified that one of the men took her purse, which contained some cash and a gold butterfly necklace charm, and ran. Antonio testified that he robbed Luna at gunpoint while wearing the number 18 jersey, which Campbell had taken off. In an interview with law enforcement, Campbell told an officer that he waited in the car while Antonio robbed Luna, knowing Antonio was going to rob her but not wanting to participate, then left the scene. Upon a subsequent search of Campbell's house, police found Luna's gold butterfly necklace charm in the Chrysler parked in Campbell's driveway. Another police officer testified that when he reviewed Wal-Mart's security footage, he "could see Ms. Luna where she got robbed," although not distinctly, and could see the Chrysler pass through the area. Contrary to Campbell's contention, the evidence adduced at trial was sufficient for any rational trier of fact to find Campbell guilty beyond a reasonable doubt of the armed robbery of Luna (Count 10).[28]

*Judgment affirmed. Dillard and Boggs, JJ., concur.*

DECIDED FEBRUARY 22, 2012.

*Phillips & Nemajovsky, Mark T. Phillips*, for appellant.
*J. David Miller, District Attorney, Bradfield M. Shealy, Jessica W. Clark, Assistant District Attorneys*, for appellee.

---

[27] See *Rankin v. State*, 309 Ga. App. 817, 818 (1) (711 SE2d 377) (2011) (sufficient circumstantial evidence supported defendant's armed robbery conviction where he was found in possession of clothes similar to those worn by the robber, a gun similar to that used in the crime, and cash in similar denominations as that taken by the robber).

[28] *Lunz*, supra; *Rankin*, supra, 309 Ga. App. at 818-819 (1).