**FIRST DIVISION**
**BARNES, P. J.,**
**DOYLE, P. J., and LAND, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**May 31, 2023**

# In the Court of Appeals of Georgia

A23A0026. HUFF v. THE STATE.

DOYLE, Presiding Judge.

Following a jury trial, Rufus Huff was convicted of identity fraud[1] and theft by taking,[2] based on his participation in a scheme to obtain a $95,000 vehicle purchase loan from Navy Federal Credit Union. He appeals from the denial of his motion for new trial, arguing that the trial court erred by denying his motion for directed verdict on both counts, overruling his objection to the prosecutor's improper comment during

---

[1] See OCGA § 16-9-121 (a) (1).

[2] See OCGA § 16-8-2.

opening statements, and modifying Huff's sentence after the term of court ended.[3] For the reasons set forth infra, we affirm the trial court's judgment.

Viewed in the light most favorable to the verdict,[4] the evidence shows that in early 2015, Huff and an associate, Edward Anthony Collier, asked James Piper and his wife to invest in their plan to buy luxury vehicles and resell them for a profit. Huff told the Pipers that he had a relationship with Navy Federal Credit Union and could work as a broker to help Mr. Piper obtain a loan, and Mr. Piper gave Huff permission to apply for a car loan in Piper's name. The loan was approved, and Navy Federal issued a check to Piper for $95,000. At Huff's direction, Piper mailed the check to Huff. Piper expected Huff to use the cash to purchase a high-end vehicle, which they would then re-sell, and Piper also expected Huff to send him $15,000 immediately so that he would be able to make payments on the loan as they came due. After Piper sent the bank's check to Huff, however, Piper had difficulty reaching Huff. Huff eventually sent Piper $15,000, which Piper used to make payments on the loan, but

---

[3] In his initial brief on appeal, Huff also contended that he received ineffective assistance from his trial counsel. He subsequently recast his brief, however, to omit this claim of error.

[4] See *Jackson v. Virginia*, 443 U. S. 307, 319 (II) (B) (99 SCt 2781, 61 LE2d 560) (1979); *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

Huff never provided a valid vehicle identification number ("VIN") for the car, and the credit union consequently converted the loan from a vehicle-purchase loan to an unsecured personal loan at the maximum allowable interest rate. By that point, Huff was not responding to Piper's attempts to contact him. Piper made loan payments for as long as he could, draining his life savings, then filed fraud reports with Navy Federal and the police. Navy Federal ultimately "charged off" an outstanding balance of $93,319.46, which included penalties and interest.

Pamela Warner, a licensed automobile dealer, testified that in June 2015, Collier asked her to handle a transaction through which the Pipers would purchase a luxury car. When Warner met with Collier and Huff, Collier showed her pictures of the car they intended to purchase and either Collier or Huff showed her a certificate of title for the car. Warner agreed to service the transaction for a five percent fee, and the men subsequently gave her the Navy Federal check for $95,0000. Warner deposited the check and, after deducting her fee, sent Huff a check for $90,250. Huff's bank records showed that he deposited the $90,250 check into a savings account in his name.

3

The certificate of title the men showed to Warner, however, was counterfeit. The certificate listed the car as a black 2010 Bentley Flying Spur and Gilbert F. Walker of Columbia, South Carolina as the owner. But Mr. Walker appeared as a witness at trial and testified that he had never owned a Bentley and had never entered into a transaction with Collier or Huff regarding the sale of any vehicle. Additionally, the officer who investigated the crime testified that the VIN listed on the certificate was not tied to an existing car.

At the close of the State's case in chief, Huff moved for a directed verdict on both counts. As to identity fraud, he argued that the evidence showed it was Collier, not Huff, who used Mr. Walker's identifying information on the car title. As to theft by taking, Huff argued that because the funds at issue belonged to Mr. Piper, not Navy Federal, the State had alleged both the wrong victim and the wrong crime. In response, the State argued, as to identity fraud, that Huff was part of a criminal conspiracy and is therefore responsible for its criminal conduct. As to theft by taking, the State argued that Navy Federal was the "ultimate victim" because it was the entity that provided the funds for the scam. The trial court denied the motion, concluding that a rational trier of fact could find the essential elements of the crimes alleged

4

beyond a reasonable doubt. The jury later found Huff guilty on both counts, and the

trial court denied his subsequent motion for new trial. Huff then filed this appeal.

1. Huff contends that the trial court erred by denying his motion for directed

verdict on the identity fraud count, arguing that the State failed to establish that he,

rather than Collier, used Mr. Walker's identifying information without permission.

We disagree.

When reviewing the denial of a motion for directed verdict, "we view all of the

evidence presented at trial in the light most favorable to the verdicts and ask whether

any rational trier of fact could have found the defendant guilty beyond a reasonable

doubt of the crimes of which he was convicted."[5] Pursuant to OCGA § 16-9-121 (a)

(1), a person is guilty of identity fraud "when he or she willfully and fraudulently

[w]ithout authorization or consent, uses or possesses with intent to fraudulently use

identifying information concerning a person[.]" In this case, the indictment alleged

that Huff and Collier used the name and address of Mr. Gilbert Walker for a

fraudulent purpose without Walker's consent. At trial, the State presented evidence

that Huff and Collier met with an automobile dealer and delivered to her a car title for

---

[5] (Citation omitted.) *Rendon-Villasana v. State*, 360 Ga. App. 769, 772 (1) (861 SE2d 462) (2021).

a 2010 Bentley luxury vehicle, that Mr. Walker's identifying information was listed on the certificate of title, and that Walker never gave Huff or Collier permission to use his information or to sell a car on his behalf. Although Huff argued to the jury that it was Collier, not Huff, who used Mr. Walker's identifying information on the car title,

> whether an alternative hypothesis raised by the defendant is reasonable is a question committed principally to the jury, and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of the guilt of the accused, we will not disturb that finding unless it is insupportable as a matter of law.[6]

Accordingly, the jury was not required to believe Huff's argument.[7] Additionally, to the extent Huff argues that another person was also involved in the theft, "[e]very person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime."[8] Ultimately, a rational juror could

---

[6] (Citation and punctuation omitted.) *Villegas v. State*, 334 Ga. App. 108, 110 (1) (778 SE2d 363) (2015).

[7] See id.

[8] OCGA § 16-2-20 (a); see *Powell v. State*, 293 Ga. App. 442, 444 (667 SE2d 213) (2008).

find that Huff was guilty beyond a reasonable doubt of identity fraud, and the trial court did not err in denying Huff's motion for a directed verdict on this count.

2. Huff contends, second, that the trial court erred by denying his motion for directed verdict on Count 2, theft by taking, because the money at issue was obtained legally from Navy Federal. Again, we disagree.

"A person commits the offense of theft by taking when he unlawfully takes . . . any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken[.]"[9] The indictment alleged that Huff committed theft by taking in that he unlawfully took $25,000 or more from Navy Federal Credit Union with the intent to deprive Navy Federal of said property. Based on the evidence presented at trial and summarized above, a rational juror could find beyond a reasonable doubt that Huff obtained $95,000 from Navy Federal by deceitful means and then kept the majority of those funds for himself. Accordingly, the trial court did not err by denying Huff's motion for a directed verdict on this count.[10]

---

[9] OCGA § 16-8-2.

[10] See *Rendon-Villasana*, 360 Ga. App. at 772 (1).

7

3. Next, Huff contends that the trial court erred by overruling his objection to the State's introduction of evidence that the Navy Federal loan had a "tremendous impact" on the Pipers' previously "excellent" credit score. Huff argues that this was victim impact evidence that should have been admitted only during the sentencing phase of the proceeding. We discern no reversible error.

"The admissibility of victim impact evidence is reviewed for abuse of discretion."[11] It is true that "[u]nder Georgia law, evidence about a crime victim's personal characteristics and the emotional impact of the crime on the victim, the victim's family, and the victim's community generally is not admissible in the guilt/innocence phase of a criminal trial."[12] However, victim impact evidence is admissible in the guilt/innocence phase if it is "clearly probative of issues at trial[.]"[13] Here, as the State asserts in response to Huff's argument, evidence of Mr. Piper's previously excellent credit score was relevant to show why Huff enlisted him to apply for the loan. It was also relevant to rebut inferences raised by Huff, in his cross-

---

[11] (Citation omitted.) *Walker v. State*, 360 Ga. App. 211, 217 (4) (860 SE2d 868) (2021).

[12] *Lofton v. State*, 309 Ga. 349, 363 (6) (b) (ii) (846 SE2d 57) (2020).

[13] *McMichen v. State*, 265 Ga. 598, 608 (17) (458 SE2d 833) (1995).

8

examination of Piper, suggesting that Piper must have lied on the application to get Navy Federal to approve the loan. Moreover, even if the trial court erred in allowing Piper to testify as to the loan's negative effect on his credit score, that error was harmless in light of the overwhelming evidence of Huff's guilt in this case.[14]

4. Finally, Huff contends that the trial court impermissibly modified his sentence after the term of court in which his sentence was imposed had ended. He appears to be complaining that, when the trial court entered his sentence, it ordered him to pay restitution "through the Community Supervision Office for the benefit of the victim(s) Navy Federal Credit Union," but then, in its restitution order, the court ordered him to pay restitution "to Navy Federal Credit Union" at the private address listed therein.[15] We see no merit in this argument.

---

[14] See *Willis v. State*, 304 Ga. 686, 715-716 (16) (820 SE2d 640) (2018) (applying harmless error test to improper victim impact testimony); *Anaya-Plasencia v. State*, 283 Ga. App. 728, 732-733 (3) (642 SE2d 401) (2007) (prosecutor's "limited remarks" asserting that the victim's daughter would grow up without a father did not require reversal because it was "highly improbable" that they contributed to the conviction of the defendant).

[15] Despite the State's assertion otherwise, Huff's failure to raise this issue in his motion for new trial does not bar us from considering it in this appeal. See OCGA § 5-5-40 (g) ("On appeal, a party shall not be limited to the grounds urged in the motion [for new trial] or any amendment thereof."); *Harris v. State*, 313 Ga. 872, 878-879 (1) (874 SE2d 73) (2022) (appellate court could review defendant's claim that trial court erred at trial even though defendant did not raise that claim in his motion for

The restitution provision of Huff's original sentence was a Special Condition of Probation, and it is well-established that a trial court may modify conditions of probation "throughout the period of the sentence,"[16] including after the expiration of the term of court in which the sentence was imposed.[17] Here, when the trial court modified the conditions of Huff's probation, he was still serving his sentence. Huff's argument on this issue is, therefore, wholly unavailing.

*Judgment affirmed. Barnes, P. J., and Land, J., concur.*

---

new trial; unlike a claim of ineffective assistance of trial counsel or erroneous denial of a motion for new trial based on newly discovered evidence, the claims presented did not require the trial court to make factual findings before the appellate court could review them).

[16] *Stephens v. State*, 289 Ga. 758, 764 (2) (b) (1) (716 SE2d 154) (2011) (pursuant to OCGA § 17-10-1 (a) (5) (A) and OCGA § 42-8-34 (g), trial court was authorized to modify the conditions of probation after orally pronouncing the sentence).

[17] See *Burns v. State*, 153 Ga. App. 529, 530 (265 SE2d 859) (1980).